**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

HOWARD HUGHES MEDICAL INSTITUTE,  :
                                 :
          Plaintiff,         :
                                 :      Civil Action No.
    v.                        :
                                 :
FACTORY MUTUAL INSURANCE COMPANY, :
                                 :
          Defendant.      :

## <u>NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant, Factory Mutual Insurance Company (hereinafter "Factory Mutual"), hereby removes to the United States District Court for the District of Delaware the case captioned *Howard Hughes Medical Institute v. Factory Mutual Insurance Company*, Case No. 07C-06-062, Superior Court of the State of Delaware, New Castle County, and as grounds for removal states as follows:

1.     On June 4, 2007, Plaintiff, Howard Hughes Medical Institute (hereinafter "HHMI") instituted suit in the Superior Court in the State of Delaware, New Castle County (Case No. 07C-06-062). A copy of the Complaint is attached hereto as Exhibit A.

2.     A courtesy copy of the Complaint was received by Factory Mutual on June 8, 2007. The Summons and Complaint were served on the Commissioner of Insurance of the State of Delaware on or about June 14, 2007. See Exhibits B and C respectively attached hereto.

3.     On June 21, 2007, Factory Mutual received the Summons and Complaint from the Commissioner of Insurance of the State of Delaware. A copy of the letter from the Insurance Commissioner's office is attached hereto as Exhibit D.

4.     The basis for federal court jurisdiction is 28 U.S.C. §1332, diversity of citizenship, which provides, in relevant part, that federal district courts have original jurisdiction

of civil actions between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

5.      28 U.S.C. § 1441(a) provides that: "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant...to the district court of the United States for the district and division embracing the place where such action is pending." The District Court of Delaware is the district that embraces New Castle County, Delaware.

6.      28 U.S.C. § 1446(b) provides as follows:

> (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

7.      This Notice is being filed within 30 days of receipt of the Summons and Complaint, Exhibit C, hereto, which were served upon Factory Mutual on June 21, 2007. The Notice is also being filed within 30 days of the receipt by Factory Mutual of the courtesy copy of the Complaint which was received on June 8, 2002, Exhibit B, hereto, as provided by 28 U.S.C. § 1446(b).

8.      As stated in the Complaint, HHMI is a non-profit corporation incorporated in Delaware with its principal place of business in Chevy Chase, Maryland.

9.     As stated in the Complaint, Factory Mutual is a corporation organized and existing under the laws of the State of Rhode Island with its principal place of business in Johnston, Rhode Island.

10.     Pursuant to the requirements of 28 U.S.C. §1446(a), Factory Mutual has attached a copy of all process, pleadings and orders served on Factory Mutual.

11.     Pursuant to the requirements of 28 U.S.C. §1446(d), Factory Mutual shall provide a copy of the Notice of Removal to HHMI and will file a certified copy of this Notice with the Clerk of the Superior Court of New Castle County, Delaware.

12.     Removal of HHMI's case to the United States District Court for the District of Delaware is required under the circumstances of this case because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

WHEREFORE, Defendant, Factory Mutual Insurance Company, prays that this action, *Howard Hughes Medical Institute v. Factory Mutual Insurance Company*, Case No. 07C-06-062, Superior Court of the State of Delaware, New Castle County, be removed to the United States District Court for the District of Delaware.

PHILLIPS, GOLDMAN & SPENCE, P.A.

Lisa McLaughlin, Esquire (#3113)
Robert Goldman, Esquire (#2508)
1200 North Broom Street
Wilmington, DE  19806
(302) 655-4200

DATE:  July 2, 2007

- and -

Thomas S. Brown, Esquire
Gibbons P.C.
1700 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
(215) 665-0400
Attorneys for Defendant,
Factory Mutual Insurance Company

## CERTIFICATE OF SERVICE

I, Robert Goldman, attorney for Defendant, hereby certify that on this the 3rd day of July, 2007, served the foregoing Notice of Removal upon the following via U.S. Mail, First Class Delivery, postage prepaid:

David J. Baldwin, Esquire
Jennifer C. Wasson, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, DE 19801

Richard P. Lewis, Esquire
Marshall Gilinsky, Esquire
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020-1182

ROBERT S. GOLDMAN, ESQUIRE (#2508)

**EXHIBIT A**

SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)

Filed: Jun 14 2007 7:58PM
Transaction ID 15104728
Case No. 07C-06-062 RRC

COUNTY: (N)   K   S          CIVIL ACTION NUMBER:

Civil Case Code **CDBT, CDEJ**

Civil Case Type: CDBT - Debt/Breach of Contrac
CDEJ-Declaratory Judgment
[SEE REVERSE SIDE FOR CODE AND TYPE]

| Caption:<br><br>HOWARD HUGHES MEDICAL INSTITUTE,<br><br>Plaintiff,<br>v.<br><br>FACTORY MUTUAL INSURANCE COMPANY,<br><br>Defendant. | Name and Status of Party filing document:<br><br>HOWARD HUGHES MEDICAL INSTITUTE,<br>Plaintiff<br><br>Document Type:[E.G.; COMPLAINT; ANSWER WITH COUNTERCLAIM]<br>**Complaint**<br>Non-Arbitration <u>X</u>          eFile <u>X</u><br>[CERTIFICATE OF VALUE MAY BE REQUIRED]<br><br>Arbitration __   Mediation __   Neutral Assessment __<br>DEFENDANT (CIRCLE ONE) **ACCEPT   REJECT**<br><br>JURY DEMAND  YES _____  No _____<br>TRACK ASSIGNMENT REQUESTED [CIRCLE ONE]<br>EXPEDITED   (STANDARD)   COMPLEX |
| ATTORNEY NAME[S]:<br>David J. Baldwin (No. 1010)<br><br>FIRM NAME:<br>POTTER ANDERSON & CORROON LLP<br><br>ADDRESS:<br>Hercules Plaza - Sixth Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br><br>TELEPHONE NUMBER:<br>Telephone:  (302) 984-6000<br><br>FAX NUMBER:<br>Telefax:    (302) 658-1192<br><br>E-MAIL ADDRESS: dbaldwin@potteranderson.com | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS<br>_____<br><br>EXPLAIN THE RELATIONSHIP[S]:<br>_____<br>_____<br>_____<br><br>OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT:<br>_____<br><br>[IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE] |

THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT [CIS] IS FILED. THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.

## SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)
## INSTRUCTIONS

**CIVIL CASE TYPE**
Please select the appropriate civil case code and case type (e.g., **CODE - AADM** and **TYPE - Administrative Agency**) from the list below. Enter this information in the designated spaces on the Case Information Statement.

| APPEALS | MISCELLANEOUS |
|---|---|
| AADM- Administrative Agency | MAAT - Appointment of Attorney |
| ACCP - Court of Common Pleas | MAFF - Application for Forfeiture |
| ACER - Certiorari | MCED - Cease and Desist Order |
| AFAM - Family Court | MCRO - Complaint Requesting Order |
| AIAB - Industrial Accident Board | MCTO - Consent Order |
| APSC - Public Service Commission | MHAC - Habeas Corpus |
| AUIB - Unemployment Insurance Appeal Board | MIND - Destruction of Indicia of Arrest |
| | MISS - Issuance of Subpoena/Material Witness |
| **COMPLAINTS** | MMAN - Mandamus |
| CAAA - Auto Arb Appeal * | MOUT - Out of State Deposition |
| CASB - Asbestos | MPOS - Writ of Possession |
| CATT - Foreign & Domestic Attachment | MPRO - Writ of Prohibition |
| CCCP - Transfer from CCP* | MROP - Petition for Return of Property |
| CCHA - Transfer form Chancery * | MROD - Road Resolution |
| CCON - Condemnation | MSAM - Satisfy Mortgage |
| CDBT - Debt/Breach of Contract * | MSOJ - Compel Satisfaction of Judgment |
| CDEF - Defamation * | MTAX - Tax Ditches |
| CDEJ - Declaratory Judgment | MVAC - Vacate Public Road |
| CEJM - Ejectment * | MSEM - Set Aside Satisfaction of Mortgage |
| CFJG - Foreign Judgment * | MSSS - Set Aside Sheriff's Sale |
| CINT - Interpleader | MSEL - Sell Real Estate for Property Tax |
| CLIB – Libel * | MTOX - Hazardous Substance Cleanup |
| CMAL - Malpractice * | MCVP - Civil Penalty |
| CACT - Class Action | MREF - Tax Intercept |
| CPIA – Personal Injury Auto * | MGAR - Appointment of Guardianship |
| CPIN - Personal Injury * | MFOR - Intercept of Forfeited Money |
| CPRD - Property Damage * | MSET - Structured Settlement |
| CPRL - Products Liability * | |
| CRPV - Replevin | **MORTGAGES** |
| CSBI - Silicone Breast Implant | MORT - Mortgage |
| CTAX - Tax Appeal | |
| CFRD - Fraud Enforcement | **MECHANICS LIENS** |
| CSPD - Summary Proceedings Dispute | LIEN - Mechanics Lien * |
| | |
| **INVOLUNTARY COMMITMENTS** | **OTHER** |
| INVC– Involuntary Commitment | OTHR - Specify Type |

### * Case types subject to Arbitration Rule 16.1

**DUTY OF THE PLAINTIFF**
Each plaintiff/counsel shall complete the attached Civil Case Information Statement (CIS) and file <u>with</u> the complaint.

**DUTY OF THE DEFENDANT**
Each defendant/counsel shall complete the attached Civil Case Information Statement (CIS) and file <u>with</u> the answer and/or first responsive pleading.

Revised 8/05

EFiled: Jun 4 2007 7:58P
Transaction ID 15104728
Case No. 07C-06-062 RRC

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

|  |  |  |
|---|---|---|
| HOWARD HUGHES MEDICAL INSTITUTE, | ) | CIVIL ACTION NO. _____ |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | NON-ARBITRATION CASE |
|  | ) |  |
| FACTORY MUTUAL INSURANCE COMPANY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

## COMPLAINT

Plaintiff Howard Hughes Medical Institute ("Plaintiff" or "HHMI"), for its complaint against defendant, Factory Mutual Insurance Company ("Defendant" or "FM"), alleges, and states as follows:

### NATURE OF THE ACTION

1.    This is an action for breach of contract and declaratory judgment involving a $500,000,000 property insurance policy which FM sold to HHMI for the policy period from April 1, 2005 until April 1, 2006, bearing Policy No. LP591 (the "Policy").

2.    On February 5, 2006, Plaintiff suffered a fire loss at its Janelia Farm Research Campus located in Ashburn, Virginia. Plaintiff has provided FM with timely notice of the loss, as well as documentation regarding its covered losses caused by the fire (the "Janelia Farm Claim").

3.    Although Plaintiff has, as of February 2007, incurred covered losses of approximately $5.3 million, and has submitted a Sworn Statement in Partial Proof of Loss to that effect, FM has refused to honor its obligations under the Policy and, instead, has only paid Plaintiff slightly more than $3.5 million for the Janelia Farm Claim.

4.    FM improperly has refused to advance or otherwise pay the outstanding sums (of approximately $1.75 million) owed to Plaintiff under the terms of the Policy.

5.    Plaintiff seeks a declaration that FM must pay the outstanding sums claimed by HHMI in its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, plus any additional soft costs, extra expense, interest or other losses covered under the Policy and incurred since February 2007.

6.    Plaintiff is an "Insured" and the Janelia Farm location is an "Insured Location" as those terms are used in the Policy.

7.    All premiums due under the Policy were paid in full.

8.    Plaintiff has complied with all terms, conditions and requirements for coverage in the Policy. No valid defenses to coverage exist under the Policy, or Defendant has waived all defenses to coverage under the Policy, or such defenses are the subject of an estoppel.

## THE PARTIES

9.    HHMI is a nonprofit medical research organization that employs hundreds of leading biomedical scientists working at the forefront of their fields. Through its grants program and other activities, HHMI is helping to enhance science education at all levels and maintain the vigor of biomedical science worldwide. HHMI has laboratories across the United States and grant programs throughout the world. HHMI is a Delaware corporation with its national headquarters in Chevy Chase, Maryland.

10.    Upon information and belief, FM is a corporation organized and existing under the laws of the State of Rhode Island, with its principal place of business in Johnston, Rhode Island.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to the Delaware Declaratory Judgments Act, 10 Del. C. § 6501 et seq. (2007), which Plaintiff invokes seeking a determination of an actual controversy among the parties to this action, as set forth more fully below.

12.     This Court has jurisdiction over the Defendant because Defendant is either: (a) licensed or authorized to do business in Delaware; or (b) transacting – or have transacted within the relevant time periods – the business of selling insurance in Delaware.

### HHMI's Insurance Policy

13.     The Policy that HHMI purchased from FM had policy limits of $500,000,000 and covered, among other things, real and personal property located at or near no fewer than 62 insured locations across the United States.

14.     The main coverage grant in the Property Damage section of the Policy (Section B) describes the insurance provided as follows:

> This Policy insures the following property, unless otherwise excluded elsewhere in this Policy, located at an Insured Location or within 1,000 feet thereof, to the extent of the interest of the Insured in such property.
>
> A.     Real Property, including new buildings and additions under construction at an Insured Location, in which the insured has an insurable interest.
>
> B.     Personal Property:
>
> 1)     Owned by the Insured.
>
> 2)     consisting of the Insured's interest as a tenant in improvements and betterments. In the event of physical loss or damage, the Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.

3)      of officers and employees of the Insured.

4)      of others in the Insured's custody to the extent the Insured is under obligation to keep insured for physical loss or damage insured by this Policy.

5)      of others in the Insured's custody to the extent of the Insured's legal liability for physical loss or damage to Personal Property. The Company will defend that portion of any suit against the Insured that alleges such liability and seeks damages for such insured physical loss or damage. The Company may, without prejudice, investigate, negotiate and settle any claim or suit as the Company deems expedient.

This policy also insures the interest of contractors and subcontractors in insured property during construction at an Insured Location or within 1,000 feet thereof, to the extent of the Insured's legal liability for insured physical loss or damage to such property. Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any TIME ELEMENT coverage provided under this Policy.

15.    The Property Damage section of the Policy also includes various

"Additional Coverages" via the following provisions:

G.    DEBRIS REMOVAL

This Policy covers the reasonable and necessary costs incurred to remove debris from an Insured Location that remains as a direct result of physical loss or damage insured by this Policy.

This Additional Coverage does not cover the costs of removal of:

1)      contaminated uninsured property; or

2)      the contaminant in or on uninsured property,

whether or not the contamination results from insured physical loss or damage. Contamination includes, but is not limited to, the presence of pollution or hazardous material.

* * *

J.    DEMOLITION AND INCREASED COST OF CONTRUCTION

1)    This Policy covers the reasonable and necessary costs incurred, described in item 3 below, to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of buildings or structures at an Insured Location, provided:

a)    such law or ordinance is in force on the date of insured physical loss or damage; and

b)    its enforcement is a direct result of such insured physical loss or damage.

2)    This Additional Coverage does not cover loss due to any law or ordinance with which the Insured was required to comply had the loss not occurred.

3)    This additional Coverage, as respects the property insured in item 1 above, covers:

a)    the cost to repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

b)    the cost:

(i)    to demolish the physically undamaged portion for such property insured; and

(ii)    to rebuild it with materials and in a manner to satisfy such law or ordinance,

to the extent that such costs result when the demolition of the physically damaged insured property is required to satisfy such law or ordinance.

* * *

M.    EXPEDITING COSTS

This Policy covers the reasonable and necessary costs incurred to pay for the temporary repair of insured damage

to insured property and to expedite the permanent repair or replacement of such damaged property.

This Additional Coverage does not cover costs:

1)      recoverable elsewhere in this Policy; or

2)      of [sic] permanent repair or replacement of damaged property.

* * *

U.      PROFESSIONAL FEES

This Policy covers the actual costs incurred by the Insured, of reasonable fees payable to the Insured's accountants, architects, auditors, engineers, or other professionals and the cost of using the Insured's employees, for producing and certifying any particulars or details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from insured loss payable under this Policy for which the Company has accepted liability.

1)      This Additional Coverage will not include the fees and costs of attorneys, public adjusters, and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them nor the fees and costs of loss consultants who provide consultation on coverage or negotiate claims.

2)      This Additional Coverage is subject to the deductible that applies to the loss.

16.     The Time Element section of the Policy (Section C) describes the relevant

insurance provided in that section as follows:

1.      LOSS INSURED

A.      This Policy insured TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from physical loss or damage of the type insured by this Policy:

1)    to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES below;

2)    used by the Insured, or for which the Insured has contracted use;

3)    located at an Insured Location or within 1,000 feet of it, or as provided as TEMPORARY REMOVAL OF PROPERTY or OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION; or

4)    while at a MISCELLANEOUS PERSONAL PROPERTY Location and such Location is not a Dependent Time Element Location; or

5)    while in transit as provided by this Policy, and

6)    during the Periods of Liability described in this section.

\* \* \*

C.    The amount of such recoverable expenses will not exceed the amount by which the loss has been reduced.

\* \* \*

D.    RENTAL INSURANCE

1)    Measurement of Loss:

The recoverable RENTAL INSURANCE loss is the Actual Loss Sustained by the Insured of the following during the PERIOD OF LIABILITY:

a)    The fair rental value of any portion of the property occupied by the Insured;

b)    The income reasonably expected from rentals of unoccupied or unrented portions of such property; and

c)    The rental income from the rented portions of such property according to bona fide leases, contracts or agreements in force at the time of loss,

all not to include noncontinuing charges and expenses.

\* \* \*

E.    SOFT COSTS

This Policy covers the Actual Loss Sustained incurred by the Insured of Soft Costs during the PERIOD OF LIABILITY arising out of the delay of completion of buildings and additions under construction directly resulting from physical loss or damage of the type insured to insured property under construction at an Insured Location.

1)    References and Application. The following term(s) wherever used in this Policy means:

a)    Soft Costs:

Expenses over and above normal expenses at Locations undergoing renovation or in the course of construction limited to the following:

(i)    Construction loan fees – the additional cost incurred to rearrange loans necessary for the completion of construction, repairs of reconstruction including: the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

(ii)    Commitment fees, leasing and marketing expenses – The cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

(iii)    Additional fees – for architects, engineers, consultants, attorneys and accountant needed for the completion of construction, repairs or reconstruction.

(iv)    Carrying costs –property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

17.    The Loss Adjustment and Settlement section of the Policy (Section D)

describes how covered losses under the Policy are to be measured, including the following

relevant provisions:

3.    VALUATION

Adjustment of the physical loss amount under this Policy will be computed as of the date of loss at the location of the loss, and for no more than the interest of the Insured, subject to the following:

* * *

L.    On all other property, the loss amount will not exceed the lesser of the following:

1)    The cost to repair.

2)    The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

3)    The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

4)    The selling price of real property or machinery and equipment, other than stock, offered for sale on the date of loss.

5)    The cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

6)    The increased cost of demolition, if any, resulting from loss covered by this Policy, if such property is scheduled for demolition.

7)    The unamortized value of improvements and betterments, if such property is not repaired or replaced at the Insured's expense.

8)    The Actual Case Value if such property is:

a)    useless to the Insured; or

b)    not repaired, replaced or rebuilt on the same or another site within two years from the date of loss.

The Insured may elect not to repair or replace the insured real and/or personal property lost, damaged or destroyed.

Loss settlement may be elected on the lesser of repair or replacements cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to the Insured's operations within two years from the date of loss. As a condition of collecting under this item, such expenditure must be unplanned as of the date of loss and be made at an Insured Location under this Policy. This item does not extend to DEMOLITION AND INCREASED COST OF CONTSTRUCTION.

18.    All requirements for coverage under the Policy have been met, and Defendants have no valid defenses to coverage.

**The Janelia Farm Claim and FM's Refusal**
**To Pay the Full Coverage Owed to HHMI**

19.    HHMI's Janelia Farm campus includes state-of-the-art laboratory facilities, a first-rate conference center and visitor housing, all specially designed to create a collegial environment for groundbreaking, interdisciplinary research.

20.    The campus includes short-term housing for conference attendees and long-term housing for visiting scientists working on campus.

21.    On December 9, 2002, HHMI entered into a contract with Turner Construction Company ("Turner") to construct the Janelia Farm campus, including a first-rate building with 21 studio apartments (the "Studio Building") to be used as long-term housing for visiting scientists and/or other staff at the Janelia Farm campus. Actual construction of the Studio Building commenced in December 2002.

22.    When HHMI bought the Policy from FM in April, 2005, the Janelia Farm location specifically was included as an "Insured Location," and the Policy specifically covered HHMI's interest in buildings and property that were under construction.

23.     After substantial progress had been made on the construction of the Studio Building, its was badly damaged in a fire on February 5, 2006.  The fire also damaged buildings near or adjacent to the Studio Building.

24.     HHMI timely notified FM of the fire at the Janelia Farm campus, and representatives of FM personally inspected the damage within days of the fire.

25.     HHMI was assisted in its collection and preparation of materials in support of the Janelia Farm Claim by its insurance broker, Aon Risk Services ("Aon").

26.     FM was assisted in reviewing the documents and information submitted by HHMI and in adjusting the Janelia Farm Claim by Gilbane Building Company ("Gilbane").

27.     Beginning in February 2006, HHMI provided to FM and its representatives detailed information and documentation regarding the damage to the Studio Building, other property and the covered losses under the Policy, and participated in numerous meetings regarding the quantification of HHMI's covered losses.

28.     At the time of the fire, HHMI was relying on the housing space at the Studio Building for its operations at the Janelia Farm campus.  Specifically, HHMI was depending on the timely completion of the construction, so that the housing space there could be used to accommodate visitors and staff that HHMI planned to locate in the Studio Building, once it was complete.

29.     The fire at the Studio Building and resulting delay in the completion of its construction made it likely that HHMI would lose the rental value of the planned apartments at the Studio Building once the campus opened, which would necessitate HHMI to incur extra expenses to house visitors and staff in alternate accommodations.

30.    Accordingly, it was critical to HHMI that the construction of the Studio Building resume and be completed as quickly as possible after the fire, to reduce HHMI's rental value and extra expense losses, and to try to put HHMI's planned use of the completed building back on track.

31.    Immediately after the fire, HHMI began discussions with Turner regarding the best way to keep the Janelia Farm project on track despite the damage caused by the fire, including negotiations of a project schedule for the reconstruction of the Studio Building and remediation of the fire damage.

32.    At all relevant times following the fire, FM was kept up to date regarding the discussions with Turner regarding the scope and cost to remediate and rebuild the Studio Building in the wake of the fire.

33.    In March, 2006, HHMI presented FM with the draft plans for the reconstruction of the Studio Building and discussed those plans with FM in detail during meetings at Janelia Farm on March 9 and 16, 2006.  At those meetings, HHMI advised FM that is was imperative that construction resume as soon as possible, for the reasons described above, among others.

34.    Because HHMI needed the construction to be carried out with the same kind and quality of workmanship and materials with which it was started, because the price quoted by Turner in the lump sum proposal was reasonable for the work involved and because it was critical to HHMI that the construction of the Studio Building resume and be completed as quickly as possible after the fire, HHMI wanted to use Turner to complete the project that it had started, and which was being delayed by the fire and its aftermath.

35.     In or about the Spring of 2006, Turner Construction presented to HHMI a "lump sum" proposal to repair and remediate the damage caused by the fire and substantially complete the original planned construction of the Studio Building by December 31, 2006, using the same designs, contractors and materials as the original Studio Building project.

36.     Because it was essential that the Studio Building construction move forward and be completed as soon as possible after the opening of the Janelia Farm campus (which was set to occur during the summer of 2006), HHMI reached an agreement in principle with Turner, in or about June 2006, to proceed with construction under the "lump sum" proposal. FM was provided with the relevant details of the "lump sum" proposal shortly thereafter. The contract for the "lump sum" proposal was not signed by HHMI or Turner until several weeks after FM was given the details regarding the proposal, although that contract was retroactively dated as of February 6, 2006 – the day after the fire.

37.     Throughout the claim process, which continued though April 2007, HHMI continued to present FM with documents and information in support of the Janelia Farm Claim. These materials substantiated a claim for covered losses under the Policy of nearly $5.3 million.

38.     In a calculated attempt to cut and slash at the full amount owed to HHMI for the Janelia Farm Claim, FM's responded to HHMI's detailed claim presentation by disputing the extent to which the amounts claimed were truly necessary to repair the property or incurred as a result of the fire.

39.     FM did agree, however, that $3,558,579 was covered under the Policy, and has paid HHMI for that undisputed portion of the loss, leaving approximately $1.75 million unpaid.

40.    Approximately $1.1 million of the unpaid portion of the Janelia Farm Claim relates to "hard costs" incurred by HHMI under the "lump sum" contract with Turner, which FM asserts are not covered under the Policy.

41.    On May 18, 2007, HHMI submitted to FM a Sworn Statement in Partial Proof of Loss, verifying that it has incurred covered losses, as of February 2007, of $5,297,126. The Sworn Statement in Partial Proof of Loss further verifies that, after deductions for past payments and the $25,000 deductible, FM sill owes HHMI $1,738,547, for covered losses as of February 2007.

42.    FM has refused to pay the amount outstanding for the Janelia Farm Claim.

43.    FM's position is in violation of the terms and conditions in the Policy and its refusal to pay the remaining $1,738,547 of HHMI's covered losses constitutes a breach of said contract.

### FIRST CAUSE OF ACTION
#### (Breach of Contract)

44.    Plaintiff repeats and realleges paragraphs 1 through 43 of the Complaint as if fully set forth at length herein.

45.    FM is obligated to pay HHMI for all covered losses pursuant to the terms and conditions of the Policy.

46.    The Janelia Farm Claim, including the costs submitted for coverage by HHMI stemming from Turner's lump sum proposal, are covered under one or more of the provisions in the Policy quoted above.

47.    In breach of its obligations under the Policy, FM has failed and refused to pay HHMI the full amount claimed via its Sworn Statement in Partial Proof of Loss, dated May 18, 2007. As a result of FM's breach of its Policy, Plaintiff has incurred damages in the amount

of the unpaid portion of the claim, as well as consequential damages in the form of attorneys' fees, among other such damages.

48.    By reason of the foregoing, FM is liable to Plaintiff for damages, the exact amount to be proven at trial, including but not limited to, all unpaid amounts claimed by HHMI in its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, consequential damages, together with attorneys' fees, costs, and disbursements that have been incurred to date and which may be incurred by Plaintiff in connection with prosecuting this action to recover under its property insurance.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)

49.    Plaintiff repeats and realleges paragraphs 1 through 48 of the Complaint as if fully set forth herein.

50.    Plaintiff seeks declaratory judgment for the purpose of determining a question of actual controversy between the parties regarding the Policy.

51.    Defendant has refused to pay HHMI the full amount claimed via its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, despite the fact that Defendant has a legal obligation to make such payment.

52.    Defendant has denied that it has an obligation under the Policy to pay HHMI the full amount claimed via its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, and denial of this obligation creates an actual controversy that declaratory judgment will resolve.

WHEREFORE, Plaintiff prays for judgment as follows:

1.    With respect to the First Cause of Action for Breach of Contract, that this Court make and enter a judgment for breach of contract against FM awarding compensatory

damages in an amount established by the evidence, including all sums claimed by Plaintiff in its

Sworn Statement in Partial Proof of Loss, dated May 18, 2007, plus any additional soft costs,

extra expense or other losses covered under the Policy and incurred since February 2007, as well

as all other damages caused by or resulting from FM's breach, including consequential damages;

2.    With respect to the Second Cause of Action for Declaratory Judgment,

that this Court make and enter a declaratory judgment that FM must pay all sums claimed by

Plaintiff in its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, plus any additional

soft costs, extra expense or other losses covered under the Policy and incurred since February

2007, as well as all other damages caused by or resulting from FM's breach, including

consequential damages;

3.    With respect to all Causes of Action, that this Court:

a.    pursuant to 18 Del. Code §4102, award Plaintiff all reasonable

attorneys' fees for this action against FM upon Plaintiff's policy of property insurance;

b.    award to Plaintiff pre-judgment and post-judgment interest and

costs, as provided by law;

c.    provide such other relief as the Court may deem just and proper.

*Of Counsel:*

Richard P. Lewis
Marshall Gilinsky
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020-1182
(212) 278-1000


Dated: June 4, 2007
799106/31904

POTTER ANDERSON & CORROON LLP

By *David J. Baldwin*

David J. Baldwin (No. 1010)
Jennifer C. Wasson (No. 4933)
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
(302) 984-6017

*Attorneys for Plaintiff Howard Hughes Medical
Institute*

EFiled: Jun 4 2007 7:58P
Transaction ID 15104728
Case No. 07C-06-062 RRC

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

HOWARD HUGHES MEDICAL INSTITUTE, ) CIVIL ACTION NO. _____
                                 )
              Plaintiff,          )
                                 )
         v.                       ) NON-ARBITRATION CASE
                                 )
FACTORY MUTUAL INSURANCE COMPANY, )
                                 )
              Defendant.          )
                                 )

## CERTIFICATE OF NON-ARBITRATION

I, David J. Baldwin, Attorney for Plaintiff, hereby certify in good faith at this

time, that, in my opinion, this is an action for declaratory judgment and breach of contract in

which the damages are in excess of One Hundred Thousand Dollars ($100,000.00), exclusive of

costs and interest, and that this action is therefore excepted from compulsory arbitration pursuant

to Superior Court Civil Rule 16.1(a).

*Of Counsel:*

Richard P. Lewis
Marshall Gilinsky
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020-1182
(212) 278-1000

Dated: June 4, 2007
799360/31904

POTTER ANDERSON & CORROON LLP

By: *David J. Baldwin*
    David J. Baldwin (No. 1010)
    Jennifer C. Wasson (No. 4933)
    Hercules Plaza
    1313 North Market Street, 6th Floor
    Wilmington, Delaware 19801
    (302) 984-6017

*Attorneys for Plaintiff Howard Hughes
Medical Institute*

**EXHIBIT B**

# ANDERSON KILL & OLICK, P.C.

Attorneys and Counsellors at Law

1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020-1182
TELEPHONE: 212-278-1000 ■ FAX: 212-278-1733
www.andersonkill.com

Marshall Gilinsky, Esq.
mgilinsky@andersonkill.com
(212) 278-1513

June 5, 2007

Mr. Gregory Oczkowski
Factory Mutual Insurance Company
2100 Reston Parkway, Suite 600
Reston, VA 20191

Received

JUN - 8 2007

by: Washington Claims

Re:   HHMI Studio Housing Fire Loss – FM Claim No.
      156295

Dear Mr. Oczkowski:

This firm has been retained to represent Howard Hughes Medical Institute ("HHMI") regarding the above-referenced claim under Policy No. LP591 (the "Policy") sold by Factory Mutual Insurance Company ("FM"). Enclosed please find a courtesy copy of the lawsuit that was filed today regarding this claim in Delaware Superior Court, New Castle County.

We are in receipt of FM's demand for appraisal with respect to this claim. Because the dispute between the parties deals predominantly with FM's contractual obligation to pay the costs incurred under HHMI's lump-sum contract with Turner Construction – a question of law (*i.e.*, whether the expediting expense coverage under the Policy entitles HHMI to coverage for all costs incurred under that contract for reconstruction / remediation of the damaged property) – appraisal of the outstanding portion of this claim is inappropriate at this time. Accordingly, the legal issue must be resolved by a court of law, not an appraisal panel.

NYDOCS1-863133.1

New York ■ Chicago ■ Greenwich ■ Newark ■ Philadelphia ■ Washington, D.C.

**ANDERSON KILL & OLICK, P.C.**

Mr. Gregory Oczkowski
June 5, 2007
Page 2

        To avoid any potential claim by FM that HHMI has waived any rights in any appraisal, however, please be advised that if an appraisal were eventually to proceed, HHMI would select as its appraiser:

> Russ Opferkuch
> Senior Vice President
> Aon Horizon Consultants
> 500 Greenwich Street
> New York, NY 10013
> Tel. 212-274-9100

Very truly yours,

Marshall Gilinsky

Enclosure

cc:    Deborah Almo (FM)
       Sue Plotnick (HHMI)
       Glen Zwicker, Esq. (HHMI)
       Richard Lewis, Esq. (AKO)

**EXHIBIT C**

STATE
07 JUN 14

EFiled: Jun 4 2007 7:58P
Transaction ID 15104728
Case No. 07C-06-062 RRC
SUMMONS INSURANCE COMMISSIO

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

HOWARD HUGHES MEDICAL INSTITUTE, ) CIVIL ACTION NO. _____
)
Plaintiff, )
)
v. ) NON-ARBITRATION CASE
)
FACTORY MUTUAL INSURANCE COMPANY, )
)
Defendant. )
)

## SUMMONS

**THE STATE OF DELAWARE,**
**TO THE SPECIAL PROCESS SERVER:**

### YOU ARE COMMANDED:

1.      To summon the below-named Defendant so that, within twenty (20) days after service hereof upon Defendant, exclusive of the day of service, Defendant shall serve upon David J. Baldwin, Plaintiff's attorney, whose address is c/o Potter Anderson & Corroon LLP, Hercules Plaza - Sixth Floor, 1313 North Market Street, Wilmington, DE 19801, an answer to the Complaint (and, if an Affidavit of Demand has been filed, an Affidavit of Defense).

2.      To serve upon Defendant a copy hereof and of the Complaint (and of the Affidavit of Demand if any has been filed by Plaintiff).

Dated: June 13, 2007

*SHARON D. AGNEW*
*Prothonotary*

*Per Deputy*

Factory Mutual Insurance Company

**TO THE ABOVE-NAMED DEFENDANT:**

In case of your failure, within twenty (20) days after service hereof upon you, exclusive of the day of service, to serve on Plaintiff's attorney named above an answer to the Complaint (and, if an Affidavit of Demand has been filed, an Affidavit of Defense), judgment by default will be rendered against you for the relief demanded in the Complaint (or in the Affidavit of Demand, if any).

_SHARON D. AGNEW_
Prothonotary

_____
Per Deputy

799174

2

SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)

EFiled: Jun 14 2007  7:58PM EDT
Transaction ID 15104728
Case No. 07C-06-062 RRC

COUNTY: ( N )  K  S          CIVIL ACTION NUMBER:

Civil Case Code **CDBT, CDEJ**          Civil Case Type: CDBT - Debt/Breach of Contrac
CDEJ-Declaratory Judgment
[SEE REVERSE SIDE FOR CODE AND TYPE]

| | |
|---|---|
| CAPTION:<br><br>HOWARD HUGHES MEDICAL INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>FACTORY MUTUAL INSURANCE COMPANY,<br><br>Defendant. | NAME AND STATUS OF PARTY FILING DOCUMENT:<br><br>HOWARD HUGHES MEDICAL INSTITUTE,<br>Plaintiff<br><br>DOCUMENT TYPE:[E.G.: COMPLAINT; ANSWER WITH COUNTERCLAIM]<br>**Complaint**<br>Non-Arbitration X    eFile X<br>[CERTIFICATE OF VALUE MAY BE REQUIRED]<br><br>Arbitration __  Mediation __  Neutral Assessment __<br>DEFENDANT (CIRCLE ONE) ACCEPT    REJECT<br><br>JURY DEMAND  YES _____  NO _____<br>TRACK ASSIGNMENT REQUESTED (CIRCLE ONE)<br>EXPEDITED   (STANDARD)   COMPLEX |
| ATTORNEY NAME[S]:<br>David J. Baldwin (No. 1010)<br><br>FIRM NAME:<br>POTTER ANDERSON & CORROON LLP<br><br>ADDRESS:<br>Hercules Plaza - Sixth Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br><br>TELEPHONE NUMBER:<br>Telephone:  (302) 984-6000<br><br>FAX NUMBER:<br>Telefax:    (302) 658-1192<br><br>E-MAIL ADDRESS: dbaldwin@potteranderson.com | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS<br><br>_____<br><br>EXPLAIN THE RELATIONSHIP[S]:<br><br>_____<br>_____<br>_____<br><br>OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT:<br><br>_____<br>[IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE] |

THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED. THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.

## SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)
## INSTRUCTIONS

### CIVIL CASE TYPE
Please select the appropriate civil case code and case type (e.g., **CODE - AADM** and **TYPE - Administrative Agency**) from the list below.  Enter this information in the designated spaces on the Case Information Statement.

**APPEALS**
AADM- Administrative Agency
ACCP - Court of Common Pleas
ACER - Certiorari
AFAM - Family Court
AIAB - Industrial Accident Board
APSC - Public Service Commission
AUIB - Unemployment Insurance Appeal Board

**COMPLAINTS**
CAAA - Auto Arb Appeal *
CASB - Asbestos
CATT - Foreign & Domestic Attachment
CCCP - Transfer from CCP*
CCHA - Transfer form Chancery *
CCON - Condemnation
CDBT - Debt/Breach of Contract *
CDEF - Defamation *
CDEJ - Declaratory Judgment
CEJM - Ejectment *
CFJG - Foreign Judgment *
CINT - Interpleader
CLIB - Libel *
CMAL - Malpractice *
CACT - Class Action
CPIA - Personal Injury Auto *
CPIN - Personal Injury *
CPRD - Property Damage *
CPRL - Products Liability *
CRPV - Replevin
CSBI - Silicone Breast Implant
CTAX - Tax Appeal
CFRD - Fraud Enforcement
CSPD - Summary Proceedings Dispute

**INVOLUNTARY COMMITMENTS**
INVC- Involuntary Commitment

**MISCELLANEOUS**
MAAT - Appointment of Attorney
MAFF - Application for Forfeiture
MCED - Cease and Desist Order
MCRO - Complaint Requesting Order
MCTO - Consent Order
MHAC - Habeas Corpus
MIND - Destruction of Indicia of Arrest
MISS - Issuance of Subpoena/Material Witness
MMAN - Mandamus
MOUT - Out of State Deposition
MPOS - Writ of Possession
MPRO - Writ of Prohibition
MROP - Petition for Return of Property
MROD - Road Resolution
MSAM - Satisfy Mortgage
MSOJ - Compel Satisfaction of Judgment
MTAX - Tax Ditches
MVAC - Vacate Public Road
MSEM - Set Aside Satisfaction of Mortgage
MSSS - Set Aside Sheriff's Sale
MSEL - Sell Real Estate for Property Tax
MTOX - Hazardous Substance Cleanup
MCVP - Civil Penalty
MREF - Tax Intercept
MGAR - Appointment of Guardianship
MFOR - Intercept of Forfeited Money
MSET - Structured Settlement

**MORTGAGES**
MORT - Mortgage

**MECHANICS LIENS**
LIEN - Mechanics Lien *

**OTHER**
OTHR - Specify Type

## * Case types subject to Arbitration Rule 16.1

**DUTY OF THE PLAINTIFF**
Each plaintiff/counsel shall complete the attached Civil Case Information Statement (CIS) and file <u>with</u> the complaint.

**DUTY OF THE DEFENDANT**
Each defendant/counsel shall complete the attached Civil Case Information Statement (CIS) and file <u>with</u> the answer and/or first responsive pleading.

Revised 8/05

EFiled: Jun 4 2007 7:58P
Transaction ID 15104728
Case No. 07C-06-062 RRC

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

HOWARD HUGHES MEDICAL INSTITUTE,      )

     Plaintiff,      )

v.      )

FACTORY MUTUAL INSURANCE COMPANY,      )

     Defendant.      )

CIVIL ACTION NO. _____

NON-ARBITRATION CASE

## COMPLAINT

Plaintiff Howard Hughes Medical Institute ("Plaintiff" or "HHMI"), for its complaint against defendant, Factory Mutual Insurance Company ("Defendant" or "FM"), alleges, and states as follows:

### NATURE OF THE ACTION

1.     This is an action for breach of contract and declaratory judgment involving a $500,000,000 property insurance policy which FM sold to HHMI for the policy period from April 1, 2005 until April 1, 2006, bearing Policy No. LP591 (the "Policy").

2.     On February 5, 2006, Plaintiff suffered a fire loss at its Janelia Farm Research Campus located in Ashburn, Virginia. Plaintiff has provided FM with timely notice of the loss, as well as documentation regarding its covered losses caused by the fire (the "Janelia Farm Claim").

3.     Although Plaintiff has, as of February 2007, incurred covered losses of approximately $5.3 million, and has submitted a Sworn Statement in Partial Proof of Loss to that effect, FM has refused to honor its obligations under the Policy and, instead, has only paid Plaintiff slightly more than $3.5 million for the Janelia Farm Claim.

4.    FM improperly has refused to advance or otherwise pay the outstanding sums (of approximately $1.75 million) owed to Plaintiff under the terms of the Policy.

5.    Plaintiff seeks a declaration that FM must pay the outstanding sums claimed by HHMI in its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, plus any additional soft costs, extra expense, interest or other losses covered under the Policy and incurred since February 2007.

6.    Plaintiff is an "Insured" and the Janelia Farm location is an "Insured Location" as those terms are used in the Policy.

7.    All premiums due under the Policy were paid in full.

8.    Plaintiff has complied with all terms, conditions and requirements for coverage in the Policy. No valid defenses to coverage exist under the Policy, or Defendant has waived all defenses to coverage under the Policy, or such defenses are the subject of an estoppel.

## THE PARTIES

9.    HHMI is a nonprofit medical research organization that employs hundreds of leading biomedical scientists working at the forefront of their fields. Through its grants program and other activities, HHMI is helping to enhance science education at all levels and maintain the vigor of biomedical science worldwide. HHMI has laboratories across the United States and grant programs throughout the world. HHMI is a Delaware corporation with its national headquarters in Chevy Chase, Maryland.

10.    Upon information and belief, FM is a corporation organized and existing under the laws of the State of Rhode Island, with its principal place of business in Johnston, Rhode Island.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to the Delaware

Declaratory Judgments Act, 10 Del. C. § 6501 et seq. (2007), which Plaintiff invokes seeking a

determination of an actual controversy among the parties to this action, as set forth more fully

below.

12.    This Court has jurisdiction over the Defendant because Defendant is

either:  (a) licensed or authorized to do business in Delaware; or (b) transacting – or have

transacted within the relevant time periods – the business of selling insurance in Delaware.

### HHMI's Insurance Policy

13.    The Policy that HHMI purchased from FM had policy limits of

$500,000,000 and covered, among other things, real and personal property located at or near no

fewer than 62 insured locations across the United States.

14.    The main coverage grant in the Property Damage section of the Policy

(Section B) describes the insurance provided as follows:

> This Policy insures the following property, unless
> otherwise excluded elsewhere in this Policy, located at an
> Insured Location or within 1,000 feet thereof, to the extent
> of the interest of the Insured in such property.
>
> A.    Real Property, including new buildings and
> additions under construction at an Insured Location, in
> which the insured has an insurable interest.
>
> B.    Personal Property:
>
> 1)    Owned by the Insured.
>
> 2)    consisting of the Insured's interest as a tenant in
> improvements and betterments.  In the event of physical
> loss or damage, the Company agrees to accept and consider
> the Insured as sole and unconditional owner of
> improvements and betterments, notwithstanding any
> contract or lease to the contrary.

3)    of officers and employees of the Insured.

4)    of others in the Insured's custody to the extent the Insured is under obligation to keep insured for physical loss or damage insured by this Policy.

5)    of others in the Insured's custody to the extent of the Insured's legal liability for physical loss or damage to Personal Property. The Company will defend that portion of any suit against the Insured that alleges such liability and seeks damages for such insured physical loss or damage. The Company may, without prejudice, investigate, negotiate and settle any claim or suit as the Company deems expedient.

This policy also insures the interest of contractors and subcontractors in insured property during construction at an Insured Location or within 1,000 feet thereof, to the extent of the Insured's legal liability for insured physical loss or damage to such property. Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any TIME ELEMENT coverage provided under this Policy.

15.    The Property Damage section of the Policy also includes various "Additional Coverages" via the following provisions:

G.    DEBRIS REMOVAL

This Policy covers the reasonable and necessary costs incurred to remove debris from an Insured Location that remains as a direct result of physical loss or damage insured by this Policy.

This Additional Coverage does not cover the costs of removal of:

1)    contaminated uninsured property; or

2)    the contaminant in or on uninsured property,

whether or not the contamination results from insured physical loss or damage. Contamination includes, but is not limited to, the presence of pollution or hazardous material.

\* \* \*

### J.     DEMOLITION AND INCREASED COST OF CONTRUCTION

1)     This Policy covers the reasonable and necessary costs incurred, described in item 3 below, to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of buildings or structures at an Insured Location, provided:

a)     such law or ordinance is in force on the date of insured physical loss or damage; and

b)     its enforcement is a direct result of such insured physical loss or damage.

2)     This Additional Coverage does not cover loss due to any law or ordinance with which the Insured was required to comply had the loss not occurred.

3)     This additional Coverage, as respects the property insured in item I above, covers:

a)     the cost to repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

b)     the cost:

(i)     to demolish the physically undamaged portion for such property insured; and

(ii)     to rebuild it with materials and in a manner to satisfy such law or ordinance,

to the extent that such costs result when the demolition of the physically damaged insured property is required to satisfy such law or ordinance.

\* \* \*

### M.     EXPEDITING COSTS

This Policy covers the reasonable and necessary costs incurred to pay for the temporary repair of insured damage

to insured property and to expedite the permanent repair or replacement of such damaged property.

This Additional Coverage does not cover costs:

1)      recoverable elsewhere in this Policy; or

2)      of [sic] permanent repair or replacement of damaged property.

* * *

U.      PROFESSIONAL FEES

This Policy covers the actual costs incurred by the Insured, of reasonable fees payable to the Insured's accountants, architects, auditors, engineers, or other professionals and the cost of using the Insured's employees, for producing and certifying any particulars or details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from insured loss payable under this Policy for which the Company has accepted liability.

1)      This Additional Coverage will not include the fees and costs of attorneys, public adjusters, and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them nor the fees and costs of loss consultants who provide consultation on coverage or negotiate claims.

2)      This Additional Coverage is subject to the deductible that applies to the loss.

16.     The Time Element section of the Policy (Section C) describes the relevant

insurance provided in that section as follows:

1.      LOSS INSURED

A.      This Policy insured TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from physical loss or damage of the type insured by this Policy:

1)    to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES below;

2)    used by the Insured, or for which the Insured has contracted use;

3)    located at an Insured Location or within 1,000 feet of it, or as provided as TEMPORARY REMOVAL OF PROPERTY or OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION; or

4)    while at a MISCELLANEOUS PERSONAL PROPERTY Location and such Location is not a Dependent Time Element Location; or

5)    while in transit as provided by this Policy, and

6)    during the Periods of Liability described in this section.

\* \* \*

C.    The amount of such recoverable expenses will not exceed the amount by which the loss has been reduced.

\* \* \*

D.    RENTAL INSURANCE

1)    Measurement of Loss:

The recoverable RENTAL INSURANCE loss is the Actual Loss Sustained by the Insured of the following during the PERIOD OF LIABILITY:

a)    The fair rental value of any portion of the property occupied by the Insured;

b)    The income reasonably expected from rentals of unoccupied or unrented portions of such property; and

c)    The rental income from the rented portions of such property according to bona fide leases, contracts or agreements in force at the time of loss,

all not to include noncontinuing charges and expenses.

\* \* \*

E.    SOFT COSTS

This Policy covers the Actual Loss Sustained incurred by
the Insured of Soft Costs during the PERIOD OF
LIABILITY arising out of the delay of completion of
buildings and additions under construction directly
resulting from physical loss or damage of the type insured
to insured property under construction at an Insured
Location.

1)    References and Application.  The following term(s)
wherever used in this Policy means:

a)    Soft Costs:

Expenses over and above normal expenses at Locations
undergoing renovation or in the course of construction
limited to the following:

(i)    Construction loan fees – the additional cost incurred
to rearrange loans necessary for the completion of
construction, repairs of reconstruction including: the cost to
arrange refinancing, accounting work necessary to
restructure financing, legal work necessary to prepare new
documents, charges by the lenders for the extension or
renewal of loans necessary.

(ii)    Commitment fees, leasing and marketing expenses
– The cost of returning any commitment fees received from
prospective tenant(s) or purchaser(s), the cost of re-leasing
and marketing due to loss of tenant(s) or purchaser(s).

(iii)    Additional fees – for architects, engineers,
consultants, attorneys and accountant needed for the
completion of construction, repairs or reconstruction.

(iv)    Carrying costs –property taxes, building permits,
additional interest on loans, realty taxes and insurance
premiums.

17.    The Loss Adjustment and Settlement section of the Policy (Section D)

describes how covered losses under the Policy are to be measured, including the following

relevant provisions:

3.    VALUATION

Adjustment of the physical loss amount under this Policy will be computed as of the date of loss at the location of the loss, and for no more than the interest of the Insured, subject to the following:

*  *  *

L.    On all other property, the loss amount will not exceed the lesser of the following:

1)    The cost to repair.

2)    The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

3)    The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

4)    The selling price of real property or machinery and equipment, other than stock, offered for sale on the date of loss.

5)    The cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

6)    The increased cost of demolition, if any, resulting from loss covered by this Policy, if such property is scheduled for demolition.

7)    The unamortized value of improvements and betterments, if such property is not repaired or replaced at the Insured's expense.

8)    The Actual Case Value if such property is:

a)    useless to the Insured; or

b)    not repaired, replaced or rebuilt on the same or another site within two years from the date of loss.

The Insured may elect not to repair or replace the insured real and/or personal property lost, damaged or destroyed.

> Loss settlement may be elected on the lesser of repair or
> replacements cost basis if the proceeds of such loss
> settlement are expended on other capital expenditures
> related to the Insured's operations within two years from
> the date of loss. As a condition of collecting under this
> item, such expenditure must be unplanned as of the date of
> loss and be made at an Insured Location under this Policy.
> This item does not extend to DEMOLITION AND
> INCREASED COST OF CONTSTRUCTION.

18. All requirements for coverage under the Policy have been met, and

Defendants have no valid defenses to coverage.

### The Janelia Farm Claim and FM's Refusal To Pay the Full Coverage Owed to HHMI

19. HHMI's Janelia Farm campus includes state-of-the-art laboratory

facilities, a first-rate conference center and visitor housing, all specially designed to create a

collegial environment for groundbreaking, interdisciplinary research.

20. The campus includes short-term housing for conference attendees and

long-term housing for visiting scientists working on campus.

21. On December 9, 2002, HHMI entered into a contract with Turner

Construction Company ("Turner") to construct the Janelia Farm campus, including a first-rate

building with 21 studio apartments (the "Studio Building") to be used as long-term housing for

visiting scientists and/or other staff at the Janelia Farm campus. Actual construction of the

Studio Building commenced in December 2002.

22. When HHMI bought the Policy from FM in April, 2005, the Janelia Farm

location specifically was included as an "Insured Location," and the Policy specifically covered

HHMI's interest in buildings and property that were under construction.

23.    After substantial progress had been made on the construction of the Studio Building, its was badly damaged in a fire on February 5, 2006. The fire also damaged buildings near or adjacent to the Studio Building.

24.    HHMI timely notified FM of the fire at the Janelia Farm campus, and representatives of FM personally inspected the damage within days of the fire.

25.    HHMI was assisted in its collection and preparation of materials in support of the Janelia Farm Claim by its insurance broker, Aon Risk Services ("Aon").

26.    FM was assisted in reviewing the documents and information submitted by HHMI and in adjusting the Janelia Farm Claim by Gilbane Building Company ("Gilbane").

27.    Beginning in February 2006, HHMI provided to FM and its representatives detailed information and documentation regarding the damage to the Studio Building, other property and the covered losses under the Policy, and participated in numerous meetings regarding the quantification of HHMI's covered losses.

28.    At the time of the fire, HHMI was relying on the housing space at the Studio Building for its operations at the Janelia Farm campus. Specifically, HHMI was depending on the timely completion of the construction, so that the housing space there could be used to accommodate visitors and staff that HHMI planned to locate in the Studio Building, once it was complete.

29.    The fire at the Studio Building and resulting delay in the completion of its construction made it likely that HHMI would lose the rental value of the planned apartments at the Studio Building once the campus opened, which would necessitate HHMI to incur extra expenses to house visitors and staff in alternate accommodations.

30.    Accordingly, it was critical to HHMI that the construction of the Studio Building resume and be completed as quickly as possible after the fire, to reduce HHMI's rental value and extra expense losses, and to try to put HHMI's planned use of the completed building back on track.

31.    Immediately after the fire, HHMI began discussions with Turner regarding the best way to keep the Janelia Farm project on track despite the damage caused by the fire, including negotiations of a project schedule for the reconstruction of the Studio Building and remediation of the fire damage.

32.    At all relevant times following the fire, FM was kept up to date regarding the discussions with Turner regarding the scope and cost to remediate and rebuild the Studio Building in the wake of the fire.

33.    In March, 2006, HHMI presented FM with the draft plans for the reconstruction of the Studio Building and discussed those plans with FM in detail during meetings at Janelia Farm on March 9 and 16, 2006.  At those meetings, HHMI advised FM that is was imperative that construction resume as soon as possible, for the reasons described above, among others.

34.    Because HHMI needed the construction to be carried out with the same kind and quality of workmanship and materials with which it was started, because the price quoted by Turner in the lump sum proposal was reasonable for the work involved and because it was critical to HHMI that the construction of the Studio Building resume and be completed as quickly as possible after the fire, HHMI wanted to use Turner to complete the project that it had started, and which was being delayed by the fire and its aftermath.

35.    In or about the Spring of 2006, Turner Construction presented to HHMI a "lump sum" proposal to repair and remediate the damage caused by the fire and substantially complete the original planned construction of the Studio Building by December 31, 2006, using the same designs, contractors and materials as the original Studio Building project.

36.    Because it was essential that the Studio Building construction move forward and be completed as soon as possible after the opening of the Janelia Farm campus (which was set to occur during the summer of 2006), HHMI reached an agreement in principle with Turner, in or about June 2006, to proceed with construction under the "lump sum" proposal. FM was provided with the relevant details of the "lump sum" proposal shortly thereafter. The contract for the "lump sum" proposal was not signed by HHMI or Turner until several weeks after FM was given the details regarding the proposal, although that contract was retroactively dated as of February 6, 2006 – the day after the fire.

37.    Throughout the claim process, which continued though April 2007, HHMI continued to present FM with documents and information in support of the Janelia Farm Claim. These materials substantiated a claim for covered losses under the Policy of nearly $5.3 million.

38.    In a calculated attempt to cut and slash at the full amount owed to HHMI for the Janelia Farm Claim, FM's responded to HHMI's detailed claim presentation by disputing the extent to which the amounts claimed were truly necessary to repair the property or incurred as a result of the fire.

39.    FM did agree, however, that $3,558,579 was covered under the Policy, and has paid HHMI for that undisputed portion of the loss, leaving approximately $1.75 million unpaid.

40.     Approximately $1.1 million of the unpaid portion of the Janelia Farm Claim relates to "hard costs" incurred by HHMI under the "lump sum" contract with Turner, which FM asserts are not covered under the Policy.

41.     On May 18, 2007, HHMI submitted to FM a Sworn Statement in Partial Proof of Loss, verifying that it has incurred covered losses, as of February 2007, of $5,297,126. The Sworn Statement in Partial Proof of Loss further verifies that, after deductions for past payments and the $25,000 deductible, FM sill owes HHMI $1,738,547, for covered losses as of February 2007.

42.     FM has refused to pay the amount outstanding for the Janelia Farm Claim.

43.     FM's position is in violation of the terms and conditions in the Policy and its refusal to pay the remaining $1,738,547 of HHMI's covered losses constitutes a breach of said contract.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

44.     Plaintiff repeats and realleges paragraphs 1 through 43 of the Complaint as if fully set forth at length herein.

45.     FM is obligated to pay HHMI for all covered losses pursuant to the terms and conditions of the Policy.

46.     The Janelia Farm Claim, including the costs submitted for coverage by HHMI stemming from Turner's lump sum proposal, are covered under one or more of the provisions in the Policy quoted above.

47.     In breach of its obligations under the Policy, FM has failed and refused to pay HHMI the full amount claimed via its Sworn Statement in Partial Proof of Loss, dated May 18, 2007. As a result of FM's breach of its Policy, Plaintiff has incurred damages in the amount

of the unpaid portion of the claim, as well as consequential damages in the form of attorneys' fees, among other such damages.

48.     By reason of the foregoing, FM is liable to Plaintiff for damages, the exact amount to be proven at trial, including but not limited to, all unpaid amounts claimed by HHMI in its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, consequential damages, together with attorneys' fees, costs, and disbursements that have been incurred to date and which may be incurred by Plaintiff in connection with prosecuting this action to recover under its property insurance.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)

49.     Plaintiff repeats and realleges paragraphs 1 through 48 of the Complaint as if fully set forth herein.

50.     Plaintiff seeks declaratory judgment for the purpose of determining a question of actual controversy between the parties regarding the Policy.

51.     Defendant has refused to pay HHMI the full amount claimed via its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, despite the fact that Defendant has a legal obligation to make such payment.

52.     Defendant has denied that it has an obligation under the Policy to pay HHMI the full amount claimed via its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, and denial of this obligation creates an actual controversy that declaratory judgment will resolve.

WHEREFORE, Plaintiff prays for judgment as follows:

1.     With respect to the First Cause of Action for Breach of Contract, that this Court make and enter a judgment for breach of contract against FM awarding compensatory

damages in an amount established by the evidence, including all sums claimed by Plaintiff in its

Sworn Statement in Partial Proof of Loss, dated May 18, 2007, plus any additional soft costs,

extra expense or other losses covered under the Policy and incurred since February 2007, as well

as all other damages caused by or resulting from FM's breach, including consequential damages;

       2.      With respect to the Second Cause of Action for Declaratory Judgment,

that this Court make and enter a declaratory judgment that FM must pay all sums claimed by

Plaintiff in its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, plus any additional

soft costs, extra expense or other losses covered under the Policy and incurred since February

2007, as well as all other damages caused by or resulting from FM's breach, including

consequential damages;

       3.      With respect to all Causes of Action, that this Court:

       a.      pursuant to 18 Del. Code §4102, award Plaintiff all reasonable

attorneys' fees for this action against FM upon Plaintiff's policy of property insurance;

       b.      award to Plaintiff pre-judgment and post-judgment interest and

costs, as provided by law;

       c.      provide such other relief as the Court may deem just and proper.

*Of Counsel:*

POTTER ANDERSON & CORROON LLP

Richard P. Lewis
Marshall Gilinsky
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020-1182
(212) 278-1000

By _David J. Baldwin_
David J. Baldwin (No. 1010)
Jennifer C. Wasson (No. 4933)
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
(302) 984-6017

Dated: June 4, 2007
799106/31904

*Attorneys for Plaintiff Howard Hughes Medical Institute*

NYDOCS1-862908.2

-16-

EFiled: Jun 4 2007 7:58P
Transaction ID 15104728
Case No. 07C-06-062 RRC

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

HOWARD HUGHES MEDICAL INSTITUTE,        )        CIVIL ACTION NO. _____
                                        )
                Plaintiff,              )
                                        )
        v.                              )        NON-ARBITRATION CASE
                                        )
FACTORY MUTUAL INSURANCE COMPANY,       )
                                        )
                Defendant.              )
                                        )

## CERTIFICATE OF NON-ARBITRATION

I, David J. Baldwin, Attorney for Plaintiff, hereby certify in good faith at this time, that, in my opinion, this is an action for declaratory judgment and breach of contract in which the damages are in excess of One Hundred Thousand Dollars ($100,000.00), exclusive of costs and interest, and that this action is therefore excepted from compulsory arbitration pursuant to Superior Court Civil Rule 16.1(a).

*Of Counsel:*                           POTTER ANDERSON & CORROON LLP

Richard P. Lewis                        By _____
Marshall Gilinsky                       David J. Baldwin (No. 1010)
ANDERSON KILL & OLICK, P.C.             Jennifer C. Wasson (No. 4933)
1251 Avenue of the Americas             Hercules Plaza
New York, New York 10020-1182           1313 North Market Street, 6th Floor
(212) 278-1000                          Wilmington, Delaware 19801
                                        (302) 984-6017
Dated: June 4, 2007
799360/31904                            *Attorneys for Plaintiff Howard Hughes
                                        Medical Institute*

**EXHIBIT D**



Matthew Denn
Insurance Commissioner

Department of Insurance
841 Silver Lake Blvd.
Dover, DE 19904-2465
(302) 674-7300
(302) 739-5280 fax

RECEIVED BY
JOHN J. POMEROY

JUN 2 1 2007

TO

JUNE 18, 2007

**VIA CERTIFIED MAIL (70060810000095275934)**
**RETURN RECEIPT REQUESTED**



RECEIVED
JUN 2 1 2007
LAW & GOVT. AFFAIRS

JOHN J. POMEROY
SR. VICE PRESIDENT
FACTORY MUTUAL INSURANCE COMPANY
1301 ATWOOD AVENUE
JOHNSTON, RI 02919

RE: HOWARD HUGHES MEDICAL INSTITUTE V. FACTORY MUTUAL
INS. CO.
    C.A. NO. 07C-06-062 RRC

Dear MR. POMEROY:

Pursuant to 18 <u>Del</u>. <u>C</u>. § 525, the Delaware Insurance Commissioner was
served with the enclosed legal process on JUNE 15, 2007.

**Please do not send your response to the enclosed documentation**
**to the Delaware Insurance Department.   Instead, you should**
**respond directly to the person or legal representative identified**
**in the enclosed legal process.**

Sincerely,

*Georgia Oxford*

Georgia Oxford
Administrative Specialist II

Enclosure
cc: DAVID J. BALDWIN

℀JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| HOWARD HUGHES MEDICAL INSTITUTE | FACTORY MUTUAL INSURANCE COMPANY |

| (b) County of Residence of First Listed Plaintiff _____ | County of Residence of First Listed Defendant _____ |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

| (c) Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| David J. Baldwin, Esquire | Robert S. Goldman, Esquire |
| 1313 North Market St., Wilm., DE 19801 | 1200 North Broom Street, Wilmington, D |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1  Original Proceeding

☒ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332, §1441 (a), §1446 (b)

Brief description of cause:
Breach of insurance contract / Declaratory Judgment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE  7/3/07

SIGNATURE OF ATTORNEY OF RECORD  Robert S. Goldman (#2508)

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. **0 7 - 4 2 0**

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____1_____ COPIES OF AO FORM 85.

_____JUL - 3 2007_____

(Date forms issued)

_____ _Udu Boleish_ _____

(Signature of Party or their Representative)

_____ _Mike Bobish_ _____

(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action