## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HOWARD HUGHES MEDICAL INSTITUTE,

      Plaintiffs,

    vs.

FACTORY MUTUAL INSURANCE COMPANY,

      Defendants.

CIVIL ACTION NO. 07-420 (MPT)

## DEFENDANT, FACTORY MUTUAL INSURANCE COMPANY'S MOTION TO CHANGE VENUE FORUM NON CONVENIENS

Factory Mutual Insurance Company, by its attorneys, Phillips, Goldman & Spence, PA hereby files this Motion to Change Venue Forum Non Conveniens.

## INTRODUCTION

Howard Hughes Medical Institute filed a Complaint against Factory Mutual Insurance Company in Delaware, even though the alleged breach of contract as asserted in the Complaint has no real connection to Delaware. The case involves a dispute under an insurance policy over the value of repairs to insured property damaged in a fire. The Policy at issue was negotiated in, underwritten in, and issued from Virginia. The insured property, its local management, and the contractors and sub-contractors are all located in Virginia or nearby in Maryland. As such, the proper venue is in Virginia.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Howard Hughes Medical Institute ("HHMI") is a Delaware corporation with its principal place of business in Maryland. (Complaint, attached hereto as Exhibit "A") Defendant Factory Mutual Insurance Company ("Factory Mutual") is a Rhode Island corporation with its

principal place of business in Rhode Island. (Answer to Complaint attached hereto as Exhibit "B") Factory Mutual does not have any offices in Delaware. (Affidavit of Deborah A. Almo attached hereto as Exhibit "C") HHMI purchased a $500,000,000 property insurance policy through Factory Mutual covering the period of April 1, 2005 to April 1, 2006 (the "Policy"), and such Policy specifically included coverage for the building at issue in this case (the "Building"). (See Affidavit - Exhibit "C") The Policy was negotiated in, underwritten in and issued from Reston, Virginia. (See Affidavit - Exhibit "C") All the claims processing was also done in Reston, Virginia. (See Affidavit - Exhibit "C") Factory Mutual maintains offices in Virginia. (See Affidavit - Exhibit "C")

Additionally, the Building is located in Ashburn, Virginia. (See Affidavit - Exhibit "C") The dispute arose after the Building was damaged by fire on February 5, 2006. (See Affidavit - Exhibit "C") At the time of the fire, the Building was under construction, and approximately 63% complete. (See Affidavit - Exhibit "C") Turner Construction, a general contractor with offices in Virginia, was in charge of constructing the Building. (See Affidavit - Exhibit "C") After the fire, HHMI and Turner Construction negotiated a "lump sum" contract to complete construction on the damaged building. (See Affidavit - Exhibit "C") That contract was negotiated and signed in Virginia. All the subcontractors on the project were either from Virginia or nearby in Maryland. (See Affidavit - Exhibit "C") At this time, the construction and repairs of the Building have been completed. (See Affidavit - Exhibit "C")

There is no coverage dispute in this case, as Factory Mutual has already paid more than $3.5 million to repair the damages due to the February 5, 2006 fire. However, in the course of the claims process, a dispute arose as to the value of the fire damage repairs. Factory Mutual sought to invoke the appraisal clause of the insurance policy at issue to settle that dispute.

#1210109 v2
106330-59824

Instead, on June 4, 2007, HHMI filed the current action in the State Court of Delaware, presumably, given the lack of contacts with that State, to gain advantage of Delaware law. No discovery has been exchanged at this time. Given the diversity of the parties, on July 3, 2007 Factory Mutual sought, and was granted, removal to the District of Delaware.

Factory Mutual now seeks to transfer the venue to the Northern District of Virginia, where the building, its local management, the contractors, and the sub-contractors are located or are convenient thereto.

## LEGAL ARGUMENT

I.    **The District Court For The Northern District Of Virginia Is A More Appropriate Forum For This Action, And The Action Should Be Transferred To That District Pursuant To 28 U.S.C. § 1404(a).**

This court can and should transfer this action to the Northern District of Virginia under 28 U.S.C § 1404(a). Section 1404(a) provides that a district court may, in its discretion, transfer a civil action "for the convenience of the parties and witnesses, in the interests of justice" to a district in which the action might have been brought. 28 U.S.C § 1404(a); see also Solomon v. Cont'l American Life Ins. Co., 472 F.2d 1043, 1045 (3d Cir. 1973); Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship, 882 F. Supp. 359, 361 (D. Del. 1994). The moving party has the burden to establish that the proposed transferee forum is a proper forum and that a balancing of the proper interests weighs in favor of transferring the case there. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Factory Mutual can easily satisfy its burden.

A.    **The District Of Delaware Is Not An Appropriate Forum For This Action Because None Of The Events Giving Rise To HHMI's Claims Against Factory Mutual Occurred In Delaware**

Initially, 28 U.S.C. § 1391(a) provides that a civil action based on diversity of citizenship may only be brought:

#1210109 v2
106330-59824

- in a judicial district where any defendant resides, if all defendants reside in the same State;

- in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

- a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, <u>if there is no district in which the action may otherwise be brought</u>.

<u>See</u> 28 U.S.C. § 1391(a).

In the instant case, Factory Mutual is not a resident of Delaware, and a substantial part of the events or omissions giving rise to HHMI's claim occurred in Virginia. <u>Further, the action could have been brought in Virginia; therefore, Delaware is not an appropriate forum.</u>

In this case, HHMI's fire loss occurred in Virginia, not Delaware. The Policy at issue was negotiated in, underwritten in, and issued from Virginia. Further, it is uncontroverted the entire "property that is the subject of the action" is situated in Virginia. <u>See</u> 28 U.S.C. § 1391(a). The fire which destroyed the property at issue occurred in Virginia. The investigation into the damage and the disagreement on the value of the property, which is what this dispute is all about, occurred in Virginia. The general contractors and the sub-contractors, who repaired the damage at issue, made the repairs in and are located in Virginia or nearby in Maryland.

In contrast, Delaware has absolutely no relation to the fire loss or to the repairs. The only contact to Delaware by either party is the fact that HHMI is incorporated in Delaware, and Factory Mutual issues policies in Delaware. However, HHMI has its principal place of business in Maryland, and Delaware is only one of fifty states in which Factory Mutual issues policies. More importantly, the loss itself has no relation whatsoever to Delaware, and no relevant events pertaining to the insurance policy or HHMI's claim and cause of action, occurred in Delaware.

#1210109 v2
106330-59824

Accordingly, this case should be transferred to the Northern District of Virginia because the District of Delaware is not an appropriate forum for this action.

**B.    This Action Should Be Transferred To The Northern District Of Virginia Because That District Has (1) Subject Matter Jurisdiction Over The Claim, (2) Personal Jurisdiction Over The Parties, And (3) Is A Proper Venue For This Action**

Transfer is warranted and appropriate because the Northern District of Virginia is a district in which the action "might have been brought" under § 1404(a). A district is one in which an action "might have been brought" if that district (1) has subject matter jurisdiction over the claims, (2) personal jurisdiction over the parties, and (3) is a proper venue. See Kane v. Peugeot Motors of America, 1995 WL 945817 at n. 2 (Del. Super. Dec. 19, 1995). In Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970), the Third Circuit made clear that the relevant considerations in a Section 1404(a) analysis are jurisdiction and venue:

> A transfer is authorized by §1404(a) only if the plaintiff had an unqualified right to bring the action in the transferee forum at the time of the commencement of the action, *i.e.*, venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants.

Shutte, 431 F2d at 24.

In this case, it is readily apparent that the Northern District of Virginia is a district where this action might have been brought. The Northern District of Virginia has the requisite jurisdiction over the parties, and is a proper venue to adjudicate this case, considering that all relevant events occurred in Virginia, and that the entire property that is the subject of this litigation is located in Virginia. See 28 U.S.C. § 1391(a); Point II A. Therefore, transfer is appropriate because this action "might have been brought" in the Northern District of Virginia.

#1210109 v2
106330-59824

**C.    The Northern District of Virginia Is The More Convenient Forum And It Is In The Interests of Justice To Transfer This Action To That District**

This case should also be transferred because the Northern District of Virginia is the more appropriate and convenient forum to adjudicate this matter.  The Third Circuit has set forth a variety of private and public interests for the Court to consider in determining whether to transfer this case under § 1404(a).  See Jumara, 55 F.3d at 879.  The private interests to consider include: (1) plaintiff's forum preference (2) defendant's forum preference (3) whether the claim arose elsewhere (4) the convenience of the parties (5) the convenience of witnesses to the extent they may be unavailable for trial in the fora, and (6) the location of sources of proof such as books and records to the extent that the records could not be produced in the alternative forum.  See id.

The public interests to consider include: (1) the enforceability of the judgment (2) practical considerations that could make the trial easy, expeditious or inexpensive (3) the relative administrative difficulty in the two for or resulting from court congestion; (4) the local interest in deciding local disputes at home; (5) the public policies of the fora, and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  See id.

In the instant case, the relevant private interests weigh in favor of transferring this case to the Northern District of Virginia.  The only legitimate reason HHMI can point to as a private interest is the mere fact that Delaware, while not its state of residence or the state of the alleged wrongful activities, is simply its preference.  However, although Delaware follows a "home turf" rule, a plaintiff's choice of forum is afforded less deference when the plaintiff does not reside in the state chosen and the alleged wrongful activities occurred elsewhere.  See Tuff Torq, 882 F. Supp. at 362 (D. Del. 1994).  In the instant case, all operative facts of this lawsuit, namely the

#1210109 v2
106330-59824

negotiating and issuing of the Policy, the fire and the claims process relating to the Building, occurred in Virginia.

Comparatively, Factory Mutual's choice of forum weighs in favor of litigating this case in Virginia because the claim arose in Virginia and the relevant witnesses are located in Virginia. While neither party resides in Virginia, Factory Mutual maintains an office in Virginia, and HHMI and its relevant corporate representatives, are actually physically closer to Virginia than to Delaware. Most, if not all of the potential witnesses in this case are geographically situated in or near Virginia, and therefore subject to the Northern District's subpoena power. By contrast, none of the witnesses are subject to the subpoena power of the District of Delaware because, at this point, Factory Mutual is not aware of any witness living in Delaware.

Moreover, in addition to saving travel for the witnesses, venue in Virginia saves both parties from having to travel to two remote locations. Therefore, the Northern District of Virginia is a more convenient forum for the defendant, the potential witnesses, and even the plaintiff. Finally, it should be noted that most relevant documents and other sources of proof in this case are located in Virginia, as compared to none in Delaware, which further indicates that transferring this case to the Northern District of Virginia is appropriate. See Jumara, 55 F.3d at 879.

The relevant public interests also weigh in favor of transferring this case to the Northern District of Virginia. First, the trial or other disposition of this matter would be more efficient and expeditious in the Northern District Virginia, considering that most of the witnesses are located in Virginia, or near Virginia, where as none are located in Delaware. With respect to monetary considerations, it appears that it would be less expensive for all involved to adjudicate this case in a forum that is geographically the most convenient to all the participants (and witnesses) in

#1210109 v2
106330-59824

this case. See id. As noted above, most of the potential witnesses in this case are subject to the Northern District's subpoena power because they are situated in or near the Northern District of Virginia. Moreover, the alleged cause of action arose in Virginia, giving the Northern District of Virginia the paramount interest in deciding this local dispute at home. See id.

Accordingly, this Court should transfer the action to its proper venue, the United States District Court for the Northern District of Virginia, which is the only convenient and appropriate forum for the parties.

## CONCLUSION

Based on the foregoing, Factory Mutual respectfully requests that this Court dismiss HHMI's Complaint against Factory Mutual for lack of personal jurisdiction. Alternatively, this Court should transfer this action to the United States District Court for the Northern District of Virginia.

DATE: July 27, 2007                    PHILLIPS, GOLDMAN & SPENCE, P.A.

Robert S. Goldman, Esquire (#2508)
Lisa C. McLaughlin, Esquire (#3113)
1200 North Broom Street
Wilmington, DE  19806
(302) 655-4200

- and -

Thomas S. Brown, Esquire
GIBBONS P.C.
1700 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
(215) 665-0400

Attorneys for Defendant,
Factory Mutual Insurance Company

8

#1210109 v2
106330-59824

**EXHIBIT A**

SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)

Filed: 5th Jul 2007  7:58PM EDT
Transaction ID 15104728
Case No. 07C-06-062 RRC

COUNTY: (N) K  S        CIVIL ACTION NUMBER:

Civil Case Code **CDBT, CDEJ**        Civil Case Type: CDBT - Debt/Breach of Contrac
CDEJ-Declaratory Judgment
[SEE REVERSE SIDE FOR CODE AND TYPE]

| Caption: | Name and Status of Party filing document: |
|---|---|
| HOWARD HUGHES MEDICAL INSTITUTE, <br><br> Plaintiff, <br><br> v. <br><br> FACTORY MUTUAL INSURANCE COMPANY, <br><br> Defendant. | HOWARD HUGHES MEDICAL INSTITUTE, Plaintiff <br><br> Document Type: [E.G.; COMPLAINT; ANSWER WITH COUNTERCLAIM] **Complaint** <br> Non-Arbitration X        eFile X <br> [CERTIFICATE OF VALUE MAY BE REQUIRED] <br><br> Arbitration __  Mediation __   Neutral Assessment __ <br> DEFENDANT (CIRCLE ONE) ACCEPT    REJECT <br><br> JURY DEMAND  YES _____  No _____ <br><br> TRACK ASSIGNMENT REQUESTED (CIRCLE ONE) <br> EXPEDITED  (STANDARD)  COMPLEX |
| ATTORNEY NAME[S]: <br> David J. Baldwin (No. 1010) <br> FIRM NAME: <br> POTTER ANDERSON & CORROON LLP <br> ADDRESS: <br> Hercules Plaza - Sixth Floor <br> 1313 North Market Street <br> Wilmington, DE 19801 <br> TELEPHONE NUMBER: <br> Telephone: (302) 984-6000 <br> FAX NUMBER: <br> Telefax: (302) 658-1192 <br> E-MAIL ADDRESS: dbaldwin@potteranderson.com | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS <br><br> _____ <br> EXPLAIN THE RELATIONSHIP[S]: <br><br> _____ <br><br> OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT: <br><br> _____ <br> [IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE] |

THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT [CIS] IS FILED. THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.

## SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)
## INSTRUCTIONS

**CIVIL CASE TYPE**
Please select the appropriate civil case code and case type (e.g., **CODE - AADM** and **TYPE - Administrative Agency**) from the list below. Enter this information in the designated spaces on the Case Information Statement.

**APPEALS**
AADM- Administrative Agency
ACCP - Court of Common Pleas
ACER - Certiorari
AFAM - Family Court
AIAB - Industrial Accident Board
APSC - Public Service Commission
AUIB - Unemployment Insurance Appeal Board

**COMPLAINTS**
CAAA - Auto Arb Appeal *
CASB - Asbestos
CATT - Foreign & Domestic Attachment
CCCP - Transfer from CCP*
CCHA - Transfer form Chancery *
CCON - Condemnation
CDBT - Debt/Breach of Contract *
CDEF - Defamation *
CDEJ - Declaratory Judgment
CEJM - Ejectment *
CFJG - Foreign Judgment *
CINT - Interpleader
CLIB - Libel *
CMAL - Malpractice *
CACT - Class Action
CPIA - Personal Injury Auto *
CPIN - Personal Injury *
CPRD - Property Damage *
CPRL - Products Liability *
CRPV - Replevin
CSBI - Silicone Breast Implant
CTAX - Tax Appeal
CFRD - Fraud Enforcement
CSPD - Summary Proceedings Dispute

**INVOLUNTARY COMMITMENTS**
INVC- Involuntary Commitment

**MISCELLANEOUS**
MAAT - Appointment of Attorney
MAFF - Application for Forfeiture
MCED - Cease and Desist Order
MCRO - Complaint Requesting Order
MCTO - Consent Order
MHAC - Habeas Corpus
MIND - Destruction of Indicia of Arrest
MISS - Issuance of Subpoena/Material Witness
MMAN - Mandamus
MOUT - Out of State Deposition
MPOS - Writ of Possession
MPRO - Writ of Prohibition
MROP - Petition for Return of Property
MROD - Road Resolution
MSAM - Satisfy Mortgage
MSOJ - Compel Satisfaction of Judgment
MTAX - Tax Ditches
MVAC - Vacate Public Road
MSEM - Set Aside Satisfaction of Mortgage
MSSS - Set Aside Sheriff's Sale
MSEL - Sell Real Estate for Property Tax
MTOX - Hazardous Substance Cleanup
MCVP - Civil Penalty
MREF - Tax Intercept
MGAR - Appointment of Guardianship
MFOR - Intercept of Forfeited Money
MSET - Structured Settlement

**MORTGAGES**
MORT - Mortgage

**MECHANICS LIENS**
LIEN - Mechanics Lien *

**OTHER**
OTHR - Specify Type

## * Case types subject to Arbitration Rule 16.1

**DUTY OF THE PLAINTIFF**
Each plaintiff/counsel shall complete the attached Civil Case Information Statement (CIS) and file with the complaint.

**DUTY OF THE DEFENDANT**
Each defendant/counsel shall complete the attached Civil Case Information Statement (CIS) and file with the answer and/or first responsive pleading.

Revised 8/05

EFiled: Jun 4 2007 7:58P
Transaction ID 15104728
Case No. 07C-06-062 RR

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| HOWARD HUGHES MEDICAL INSTITUTE, | ) | CIVIL ACTION NO. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NON-ARBITRATION CASE |
| | ) | |
| FACTORY MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Howard Hughes Medical Institute ("Plaintiff" or "HHMI"), for its

complaint against defendant, Factory Mutual Insurance Company ("Defendant" or "FM"),

alleges, and states as follows:

### NATURE OF THE ACTION

1.    This is an action for breach of contract and declaratory judgment

involving a $500,000,000 property insurance policy which FM sold to HHMI for the policy

period from April 1, 2005 until April 1, 2006, bearing Policy No. LP591 (the "Policy").

2.    On February 5, 2006, Plaintiff suffered a fire loss at its Janelia Farm

Research Campus located in Ashburn, Virginia. Plaintiff has provided FM with timely notice of

the loss, as well as documentation regarding its covered losses caused by the fire (the "Janelia

Farm Claim").

3.    Although Plaintiff has, as of February 2007, incurred covered losses of

approximately $5.3 million, and has submitted a Sworn Statement in Partial Proof of Loss to that

effect, FM has refused to honor its obligations under the Policy and, instead, has only paid

Plaintiff slightly more than $3.5 million for the Janelia Farm Claim.

NYDOCS1-862908.2

4.    FM improperly has refused to advance or otherwise pay the outstanding sums (of approximately $1.75 million) owed to Plaintiff under the terms of the Policy.

5.    Plaintiff seeks a declaration that FM must pay the outstanding sums claimed by HHMI in its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, plus any additional soft costs, extra expense, interest or other losses covered under the Policy and incurred since February 2007.

6.    Plaintiff is an "Insured" and the Janelia Farm location is an "Insured Location" as those terms are used in the Policy.

7.    All premiums due under the Policy were paid in full.

8.    Plaintiff has complied with all terms, conditions and requirements for coverage in the Policy. No valid defenses to coverage exist under the Policy, or Defendant has waived all defenses to coverage under the Policy, or such defenses are the subject of an estoppel.

## THE PARTIES

9.    HHMI is a nonprofit medical research organization that employs hundreds of leading biomedical scientists working at the forefront of their fields. Through its grants program and other activities, HHMI is helping to enhance science education at all levels and maintain the vigor of biomedical science worldwide. HHMI has laboratories across the United States and grant programs throughout the world. HHMI is a Delaware corporation with its national headquarters in Chevy Chase, Maryland.

10.    Upon information and belief, FM is a corporation organized and existing under the laws of the State of Rhode Island, with its principal place of business in Johnston, Rhode Island.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to the Delaware Declaratory Judgments Act, 10 Del. C. § 6501 et seq. (2007), which Plaintiff invokes seeking a determination of an actual controversy among the parties to this action, as set forth more fully below.

12.    This Court has jurisdiction over the Defendant because Defendant is either: (a) licensed or authorized to do business in Delaware; or (b) transacting – or have transacted within the relevant time periods – the business of selling insurance in Delaware.

## HHMI's Insurance Policy

13.    The Policy that HHMI purchased from FM had policy limits of $500,000,000 and covered, among other things, real and personal property located at or near no fewer than 62 insured locations across the United States.

14.    The main coverage grant in the Property Damage section of the Policy (Section B) describes the insurance provided as follows:

> This Policy insures the following property, unless otherwise excluded elsewhere in this Policy, located at an Insured Location or within 1,000 feet thereof, to the extent of the interest of the Insured in such property.
>
> A.    Real Property, including new buildings and additions under construction at an Insured Location, in which the insured has an insurable interest.
>
> B.    Personal Property:
>
> 1)    Owned by the Insured.
>
> 2)    consisting of the Insured's interest as a tenant in improvements and betterments. In the event of physical loss or damage, the Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.

3)    of officers and employees of the Insured.

4)    of others in the Insured's custody to the extent the Insured is under obligation to keep insured for physical loss or damage insured by this Policy.

5)    of others in the Insured's custody to the extent of the Insured's legal liability for physical loss or damage to Personal Property. The Company will defend that portion of any suit against the Insured that alleges such liability and seeks damages for such insured physical loss or damage. The Company may, without prejudice, investigate, negotiate and settle any claim or suit as the Company deems expedient.

This policy also insures the interest of contractors and subcontractors in insured property during construction at an Insured Location or within 1,000 feet thereof, to the extent of the Insured's legal liability for insured physical loss or damage to such property. Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any TIME ELEMENT coverage provided under this Policy.

15.    The Property Damage section of the Policy also includes various "Additional Coverages" via the following provisions:

G.    DEBRIS REMOVAL

This Policy covers the reasonable and necessary costs incurred to remove debris from an Insured Location that remains as a direct result of physical loss or damage insured by this Policy.

This Additional Coverage does not cover the costs of removal of:

1)    contaminated uninsured property; or

2)    the contaminant in or on uninsured property,

whether or not the contamination results from insured physical loss or damage. Contamination includes, but is not limited to, the presence of pollution or hazardous material.

\* \* \*

J.     DEMOLITION AND INCREASED COST OF CONTRUCTION

1)     This Policy covers the reasonable and necessary costs incurred, described in item 3 below, to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of buildings or structures at an Insured Location, provided:

a)     such law or ordinance is in force on the date of insured physical loss or damage; and

b)     its enforcement is a direct result of such insured physical loss or damage.

2)     This Additional Coverage does not cover loss due to any law or ordinance with which the Insured was required to comply had the loss not occurred.

3)     This additional Coverage, as respects the property insured in item 1 above, covers:

a)     the cost to repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

b)     the cost:

(i)     to demolish the physically undamaged portion for such property insured; and

(ii)     to rebuild it with materials and in a manner to satisfy such law or ordinance,

to the extent that such costs result when the demolition of the physically damaged insured property is required to satisfy such law or ordinance.

\* \* \*

M.     EXPEDITING COSTS

This Policy covers the reasonable and necessary costs incurred to pay for the temporary repair of insured damage

to insured property and to expedite the permanent repair or replacement of such damaged property.

This Additional Coverage does not cover costs:

1)     recoverable elsewhere in this Policy; or

2)     of [sic] permanent repair or replacement of damaged property.

\* \* \*

U.     PROFESSIONAL FEES

This Policy covers the actual costs incurred by the Insured, of reasonable fees payable to the Insured's accountants, architects, auditors, engineers, or other professionals and the cost of using the Insured's employees, for producing and certifying any particulars or details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from insured loss payable under this Policy for which the Company has accepted liability.

1)     This Additional Coverage will not include the fees and costs of attorneys, public adjusters, and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them nor the fees and costs of loss consultants who provide consultation on coverage or negotiate claims.

2)     This Additional Coverage is subject to the deductible that applies to the loss.

16.     The Time Element section of the Policy (Section C) describes the relevant insurance provided in that section as follows:

1.     LOSS INSURED

A.     This Policy insured TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from physical loss or damage of the type insured by this Policy:

1)      to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES below;

2)      used by the Insured, or for which the Insured has contracted use;

3)      located at an Insured Location or within 1,000 feet of it, or as provided as TEMPORARY REMOVAL OF PROPERTY or OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION; or

4)      while at a MISCELLANEOUS PERSONAL PROPERTY Location and such Location is not a Dependent Time Element Location; or

5)      while in transit as provided by this Policy, and

6)      during the Periods of Liability described in this section.

* * *

C.      The amount of such recoverable expenses will not exceed the amount by which the loss has been reduced.

* * *

D.      RENTAL INSURANCE

1)      Measurement of Loss:

The recoverable RENTAL INSURANCE loss is the Actual Loss Sustained by the Insured of the following during the PERIOD OF LIABILITY:

a)      The fair rental value of any portion of the property occupied by the Insured;

b)      The income reasonably expected from rentals of unoccupied or unrented portions of such property; and

c)      The rental income from the rented portions of such property according to bona fide leases, contracts or agreements in force at the time of loss,

all not to include noncontinuing charges and expenses.

* * *

E.    SOFT COSTS

This Policy covers the Actual Loss Sustained incurred by the Insured of Soft Costs during the PERIOD OF LIABILITY arising out of the delay of completion of buildings and additions under construction directly resulting from physical loss or damage of the type insured to insured property under construction at an Insured Location.

1)    References and Application.  The following term(s) wherever used in this Policy means:

a)    Soft Costs:

Expenses over and above normal expenses at Locations undergoing renovation or in the course of construction limited to the following:

(i)    Construction loan fees – the additional cost incurred to rearrange loans necessary for the completion of construction, repairs of reconstruction including: the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

(ii)    Commitment fees, leasing and marketing expenses – The cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

(iii)    Additional fees – for architects, engineers, consultants, attorneys and accountant needed for the completion of construction, repairs or reconstruction.

(iv)    Carrying costs – property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

17.    The Loss Adjustment and Settlement section of the Policy (Section D) describes how covered losses under the Policy are to be measured, including the following relevant provisions:

3.    VALUATION

Adjustment of the physical loss amount under this Policy will be computed as of the date of loss at the location of the loss, and for no more than the interest of the Insured, subject to the following:

\* \* \*

L.    On all other property, the loss amount will not exceed the lesser of the following:

1)    The cost to repair.

2)    The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

3)    The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

4)    The selling price of real property or machinery and equipment, other than stock, offered for sale on the date of loss.

5)    The cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

6)    The increased cost of demolition, if any, resulting from loss covered by this Policy, if such property is scheduled for demolition.

7)    The unamortized value of improvements and betterments, if such property is not repaired or replaced at the Insured's expense.

8)    The Actual Case Value if such property is:

a)    useless to the Insured; or

b)    not repaired, replaced or rebuilt on the same or another site within two years from the date of loss.

The Insured may elect not to repair or replace the insured real and/or personal property lost, damaged or destroyed.

Loss settlement may be elected on the lesser of repair or replacements cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to the Insured's operations within two years from the date of loss. As a condition of collecting under this item, such expenditure must be unplanned as of the date of loss and be made at an Insured Location under this Policy. This item does not extend to DEMOLITION AND INCREASED COST OF CONTSTRUCTION.

18.     All requirements for coverage under the Policy have been met, and Defendants have no valid defenses to coverage.

<u>The Janelia Farm Claim and FM's Refusal<br>To Pay the Full Coverage Owed to HHMI</u>

19.     HHMI's Janelia Farm campus includes state-of-the-art laboratory facilities, a first-rate conference center and visitor housing, all specially designed to create a collegial environment for groundbreaking, interdisciplinary research.

20.     The campus includes short-term housing for conference attendees and long-term housing for visiting scientists working on campus.

21.     On December 9, 2002, HHMI entered into a contract with Turner Construction Company ("Turner") to construct the Janelia Farm campus, including a first-rate building with 21 studio apartments (the "Studio Building") to be used as long-term housing for visiting scientists and/or other staff at the Janelia Farm campus. Actual construction of the Studio Building commenced in December 2002.

22.     When HHMI bought the Policy from FM in April, 2005, the Janelia Farm location specifically was included as an "Insured Location," and the Policy specifically covered HHMI's interest in buildings and property that were under construction.

23.     After substantial progress had been made on the construction of the Studio Building, its was badly damaged in a fire on February 5, 2006. The fire also damaged buildings near or adjacent to the Studio Building.

24.     HHMI timely notified FM of the fire at the Janelia Farm campus, and representatives of FM personally inspected the damage within days of the fire.

25.     HHMI was assisted in its collection and preparation of materials in support of the Janelia Farm Claim by its insurance broker, Aon Risk Services ("Aon").

26.     FM was assisted in reviewing the documents and information submitted by HHMI and in adjusting the Janelia Farm Claim by Gilbane Building Company ("Gilbane").

27.     Beginning in February 2006, HHMI provided to FM and its representatives detailed information and documentation regarding the damage to the Studio Building, other property and the covered losses under the Policy, and participated in numerous meetings regarding the quantification of HHMI's covered losses.

28.     At the time of the fire, HHMI was relying on the housing space at the Studio Building for its operations at the Janelia Farm campus. Specifically, HHMI was depending on the timely completion of the construction, so that the housing space there could be used to accommodate visitors and staff that HHMI planned to locate in the Studio Building, once it was complete.

29.     The fire at the Studio Building and resulting delay in the completion of its construction made it likely that HHMI would lose the rental value of the planned apartments at the Studio Building once the campus opened, which would necessitate HHMI to incur extra expenses to house visitors and staff in alternate accommodations.

30.    Accordingly, it was critical to HHMI that the construction of the Studio Building resume and be completed as quickly as possible after the fire, to reduce HHMI's rental value and extra expense losses, and to try to put HHMI's planned use of the completed building back on track.

31.    Immediately after the fire, HHMI began discussions with Turner regarding the best way to keep the Janelia Farm project on track despite the damage caused by the fire, including negotiations of a project schedule for the reconstruction of the Studio Building and remediation of the fire damage.

32.    At all relevant times following the fire, FM was kept up to date regarding the discussions with Turner regarding the scope and cost to remediate and rebuild the Studio Building in the wake of the fire.

33.    In March, 2006, HHMI presented FM with the draft plans for the reconstruction of the Studio Building and discussed those plans with FM in detail during meetings at Janelia Farm on March 9 and 16, 2006. At those meetings, HHMI advised FM that is was imperative that construction resume as soon as possible, for the reasons described above, among others.

34.    Because HHMI needed the construction to be carried out with the same kind and quality of workmanship and materials with which it was started, because the price quoted by Turner in the lump sum proposal was reasonable for the work involved and because it was critical to HHMI that the construction of the Studio Building resume and be completed as quickly as possible after the fire, HHMI wanted to use Turner to complete the project that it had started, and which was being delayed by the fire and its aftermath.

35.    In or about the Spring of 2006, Turner Construction presented to HHMI a "lump sum" proposal to repair and remediate the damage caused by the fire and substantially complete the original planned construction of the Studio Building by December 31, 2006, using the same designs, contractors and materials as the original Studio Building project.

36.    Because it was essential that the Studio Building construction move forward and be completed as soon as possible after the opening of the Janelia Farm campus (which was set to occur during the summer of 2006), HHMI reached an agreement in principle with Turner, in or about June 2006, to proceed with construction under the "lump sum" proposal. FM was provided with the relevant details of the "lump sum" proposal shortly thereafter. The contract for the "lump sum" proposal was not signed by HHMI or Turner until several weeks after FM was given the details regarding the proposal, although that contract was retroactively dated as of February 6, 2006 – the day after the fire.

37.    Throughout the claim process, which continued though April 2007, HHMI continued to present FM with documents and information in support of the Janelia Farm Claim. These materials substantiated a claim for covered losses under the Policy of nearly $5.3 million.

38.    In a calculated attempt to cut and slash at the full amount owed to HHMI for the Janelia Farm Claim, FM's responded to HHMI's detailed claim presentation by disputing the extent to which the amounts claimed were truly necessary to repair the property or incurred as a result of the fire.

39.    FM did agree, however, that $3,558,579 was covered under the Policy, and has paid HHMI for that undisputed portion of the loss, leaving approximately $1.75 million unpaid.

40.    Approximately $1.1 million of the unpaid portion of the Janelia Farm Claim relates to "hard costs" incurred by HHMI under the "lump sum" contract with Turner, which FM asserts are not covered under the Policy.

41.    On May 18, 2007, HHMI submitted to FM a Sworn Statement in Partial Proof of Loss, verifying that it has incurred covered losses, as of February 2007, of $5,297,126. The Sworn Statement in Partial Proof of Loss further verifies that, after deductions for past payments and the $25,000 deductible, FM sill owes HHMI $1,738,547, for covered losses as of February 2007.

42.    FM has refused to pay the amount outstanding for the Janelia Farm Claim.

43.    FM's position is in violation of the terms and conditions in the Policy and its refusal to pay the remaining $1,738,547 of HHMI's covered losses constitutes a breach of said contract.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

44.    Plaintiff repeats and realleges paragraphs 1 through 43 of the Complaint as if fully set forth at length herein.

45.    FM is obligated to pay HHMI for all covered losses pursuant to the terms and conditions of the Policy.

46.    The Janelia Farm Claim, including the costs submitted for coverage by HHMI stemming from Turner's lump sum proposal, are covered under one or more of the provisions in the Policy quoted above.

47.    In breach of its obligations under the Policy, FM has failed and refused to pay HHMI the full amount claimed via its Sworn Statement in Partial Proof of Loss, dated May 18, 2007. As a result of FM's breach of its Policy, Plaintiff has incurred damages in the amount

of the unpaid portion of the claim, as well as consequential damages in the form of attorneys'

fees, among other such damages.

48.     By reason of the foregoing, FM is liable to Plaintiff for damages, the exact

amount to be proven at trial, including but not limited to, all unpaid amounts claimed by HHMI

in its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, consequential damages,

together with attorneys' fees, costs, and disbursements that have been incurred to date and which

may be incurred by Plaintiff in connection with prosecuting this action to recover under its

property insurance.

### SECOND CAUSE OF ACTION
#### (Declaratory Judgment)

49.     Plaintiff repeats and realleges paragraphs 1 through 48 of the Complaint as

if fully set forth herein.

50.     Plaintiff seeks declaratory judgment for the purpose of determining a

question of actual controversy between the parties regarding the Policy.

51.     Defendant has refused to pay HHMI the full amount claimed via its Sworn

Statement in Partial Proof of Loss, dated May 18, 2007, despite the fact that Defendant has a

legal obligation to make such payment.

52.     Defendant has denied that it has an obligation under the Policy to pay

HHMI the full amount claimed via its Sworn Statement in Partial Proof of Loss, dated May 18,

2007, and denial of this obligation creates an actual controversy that declaratory judgment will

resolve.

WHEREFORE, Plaintiff prays for judgment as follows:

1.     With respect to the First Cause of Action for Breach of Contract, that this

Court make and enter a judgment for breach of contract against FM awarding compensatory

damages in an amount established by the evidence, including all sums claimed by Plaintiff in its

Sworn Statement in Partial Proof of Loss, dated May 18, 2007, plus any additional soft costs,

extra expense or other losses covered under the Policy and incurred since February 2007, as well

as all other damages caused by or resulting from FM's breach, including consequential damages;

    2.    With respect to the Second Cause of Action for Declaratory Judgment,

that this Court make and enter a declaratory judgment that FM must pay all sums claimed by

Plaintiff in its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, plus any additional

soft costs, extra expense or other losses covered under the Policy and incurred since February

2007, as well as all other damages caused by or resulting from FM's breach, including

consequential damages;

    3.    With respect to all Causes of Action, that this Court:

    a.    pursuant to 18 Del. Code §4102, award Plaintiff all reasonable

attorneys' fees for this action against FM upon Plaintiff's policy of property insurance;

    b.    award to Plaintiff pre-judgment and post-judgment interest and

costs, as provided by law;

    c.    provide such other relief as the Court may deem just and proper.

*Of Counsel:*

Richard P. Lewis
Marshall Gilinsky
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020-1182
(212) 278-1000

Dated: June 4, 2007
799106/31904

POTTER ANDERSON & CORROON LLP

By _David J. Baldwin_

David J. Baldwin (No. 1010)
Jennifer C. Wasson (No. 4933)
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
(302) 984-6017

*Attorneys for Plaintiff Howard Hughes Medical
Institute*

EFiled: Jun 4 2007 7:58P
Transaction ID 15104728

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY
Case No. 07C-06-062 RRC

| | | |
|---|---|---|
| HOWARD HUGHES MEDICAL INSTITUTE, | ) | CIVIL ACTION NO. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NON-ARBITRATION CASE |
| | ) | |
| FACTORY MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF NON-ARBITRATION

I, David J. Baldwin, Attorney for Plaintiff, hereby certify in good faith at this time, that, in my opinion, this is an action for declaratory judgment and breach of contract in which the damages are in excess of One Hundred Thousand Dollars ($100,000.00), exclusive of costs and interest, and that this action is therefore excepted from compulsory arbitration pursuant to Superior Court Civil Rule 16.1(a).

*Of Counsel:*

Richard P. Lewis
Marshall Gilinsky
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020-1182
(212) 278-1000

Dated: June 4, 2007
799360/31904

POTTER ANDERSON & CORROON LLP

By: *David J Baldwin*

David J. Baldwin (No. 1010)
Jennifer C. Wasson (No. 4933)
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
(302) 984-6017

*Attorneys for Plaintiff Howard Hughes Medical Institute*

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HOWARD HUGHES MEDICAL INSTITUTE,    :
:
Plaintiff,    :
:    Civil Action No. 07-420
:
v.    :
:
FACTORY MUTUAL INSURANCE COMPANY, :
:
Defendant.    :

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant, Factory Mutual Insurance Company (hereinafter "FMIC") hereby responds to the correspondingly numbered paragraphs of Plaintiff's Complaint as follows:

### NATURE OF THE ACTION

1.    Denied as stated. It is admitted only that FMIC issued to Plaintiff, Howard Hughes Medical Institute (hereinafter "HHMI") Policy No. LP591 with effective dates April 1, 2005 to April 1, 2006 (hereinafter the "Policy").

2.    Denied as stated. It is admitted only that Plaintiff suffered a fire loss at its Janelia Farm Research Campus, Ashburn, Virginia on or about February 5, 2006 and that the loss was reported to FMIC.

3.    Denied. It is admitted only that FMIC has made payments to HHMI totaling $3,558,579, the full measure of the loss covered by the Policy.

4.    Denied. FMIC has reimbursed HHMI for all of its losses sustained as a result of the fire under the terms of the Policy.

5.    Denied as stated. It is admitted only that Plaintiff's Complaint seeks the recovery of additional sums which HHMI alleges to be payable under the Policy.

6.    Admitted.

7.    Admitted.

8.    Denied. As set forth in the Counterclaim of FMIC, prior to the institution of suit FMIC demanded appraisal pursuant to the terms and conditions of the Policy. The remaining averments of Paragraph 8 are denied. In addition, HHMI has failed to produce documents for examination at the request of FMIC in support of its claim, including those related to the scope of the repair work and quotations and invoices associated with the work of subcontractors.

9.    Denied. After reasonable investigation, FMIC is without knowledge or information sufficient to form a belief as to the averments of Paragraph 9 and therefore denies same and demands proof thereof at trial.

10.   Admitted.

11-12. Denied. FMIC filed a Notice of Removal, removing this matter to the District Court of Delaware. Further, neither the Delaware State Court nor the District Court of Delaware is the appropriate venue for this matter.

13-17. Denied as stated. The Policy, being a writing, speaks for itself.

18.   Denied for the reasons set forth in answer to Paragraph 8 above.

19-21. Denied. After reasonable investigation, FMIC is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraphs 19-21 of HHMI's Complaint and therefore denies same and demands proof thereof at trial.

22.   Denied. The Policy, being a writing, speaks for itself.

23.   Denied as stated. It is admitted only that the Studio Building at the Janelia Farm complex was damaged by fire on February 5, 2006 and that construction on the building was not complete at the time of the fire.

#1208760 v1
106330-59824

24.   Denied as stated.  It is admitted that the notice of the loss was given timely.

25.   Denied.  It is admitted only that a company called Aon Claims Consulting assisted HHMI after the fire.

26-27. Denied as stated.   It is admitted that Gilbane Building Company ("Gilbane") assisted FMIC in reviewing documents submitted to it after the fire.  It is denied that all of the relevant information requested by FMIC and/or Gilbane was provided by HHMI or its representatives.

28-31. Denied.   FMIC, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraphs 28-31 and therefore denies same and demands proof thereof at trial.

32-33. Denied.  To the contrary, FMIC was not advised of the lump sum agreement with Turner Construction Company until after that agreement had been finalized.  By way of further answer, FMIC, upon learning of the lump sum agreement with Turner Construction Company immediately advised HHMI that it did not agree with the scope of and cost of the proposed repairs.

34-35. Denied.   FMIC, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 34 and therefore denies same and demands proof thereof at trial.

36.   Denied.   FMIC, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 36 and therefore denies same and demands proof thereof at trial.  By way of further answer, at no time did FMIC express its agreement with the lump sum proposal nor did it ever receive all of the supporting documentation for, *inter alia*, subcontractor work as requested by it.

3

37.    Denied.   To the contrary, FMIC was never presented with all of the claim documentation requested by it.  By way of further answer, FMIC has paid to HHMI the sum of $3,558,579, the full amount required to restore the building to its pre-fire condition pursuant to the terms and conditions of the Policy.

38.    Denied.  By way of further answer, FMIC has paid to HHMI $3,558,579, the full and final payment of all amounts due under the Policy as a result of the fire to restore the building to its pre-fire condition.

39.    Denied.  By way of further answer, FMIC has paid to HHMI $3,558,579, the full and final payment of all amounts due under the Policy as a result of the fire to restore the building to its pre-fire condition.

40.    Denied.  There are no further monies due under the Policy to HHMI as a result of the fire.

41.    Denied as stated.  It is admitted only that HHMI submitted to FMIC a sworn statement in proof of loss.  The proof of loss was rejected by FMIC by letter dated June 4, 2007.  By way of further answer, FMIC has paid to HHMI the full amount of damages to which it is entitled under the terms and conditions of the Policy as a result of the fire.

42.    Denied for the reasons set forth in Paragraph 41 above.

43.    Denied.

### FIRST CAUSE OF ACTION
#### (Breach of Contract)

44.    FMIC incorporates by reference its answers to Paragraphs 1 through 43 above as though fully set forth herein.

#1208760 v1
106330-59824

45-48. Denied. By way of further answer, FMIC has paid to HHMI $3,558,579, the full and final payment of all amounts due under the Policy as a result of the fire to restore the building to its pre-fire condition.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)

49.    FMIC incorporates by reference its answers to Paragraphs 1 through 48 above as though fully set forth herein.

50-52. Denied. By way of further answer, FMIC has paid to HHMI $3,558,579, the full and final payment of all amounts due under the Policy as a result of the fire to restore the building to its pre-fire condition.

WHEREFORE,

1.    Factory Mutual Insurance Company prays that Plaintiff's First Cause of Action for Breach of Contract be dismissed, with prejudice and that it may have such other and further relief as may be just and appropriate;

2.    That Plaintiff's Second Cause of Action for Declaratory Judgment be dismissed, with prejudice as there are no additional monies owed to HHMI under the terms and conditions of the Policy as a result of the fire or otherwise;

3.    That Plaintiff's request for attorneys fees and costs; pre-judgment and post-judgment interest and other relief be dismissed, with prejudice.

## AFFIRMATIVE DEFENSES

1.    HHMI has failed to state a claim against FMIC upon which relief can be granted.

2.    HHMI has failed to state a claim under the Policy upon which relief can be granted.

3.    The claims of HHMI are barred by the terms and conditions of the Policy.

5

4.    FMIC has paid to HHMI all monies to which it is entitled under the terms and conditions of the Policy arising out of the fire loss of February 5, 2006.

5.    The lump sum agreement between HHMI and Turner Construction Company did not merely restore the Studio Building to the condition it was in immediately prior to the fire but, rather, resulted in the construction of portions of the building that had not been constructed prior to February 5, 2006 and, therefore, were not part of the fire damage. FMIC is only obligated by the terms and conditions of the Policy to restore the building to its pre-fire condition.

6.    HHMI breached that Section of the Policy entitled 4. LOSS CONDITIONS, A. REQUIREMENTS IN CASE OF LOSS which provides as follows:

The insured will:

\*          \*          \*

6) further, the Insured, will as often as may be reasonably required:

\*          \*          \*

c) produce for examination at the request of the Company:

(i) all books of accounts, business records, bills, invoices and other vouchers; or

(ii) certified copies if originals are lost,

at such reasonable times and places that may be designated by the Company or its representative and permit extracts and machine copies to be made.

7.    The Policy further provides at Section 3. ADDITIONAL COVERAGES, Subpart M. EXPEDITING COSTS, the following:

This Policy covers the reasonable and necessary costs incurred to pay for the temporary repair of insured damage to insured property and to expedite the permanent repair or replacement of such damaged property.

This Additional Coverage does not cover costs:

1)  recoverable elsewhere in this Policy; or

2)  of permanent repair or replacement of damaged property.

Certain of the amounts claimed by HHMI under the Policy are neither reasonable nor necessary costs for temporary repair or are recoverable elsewhere in the Policy or relate to permanent repair or replacement of the Studio Building.

8.      The Policy provides at Section D. LOSS ADJUSTMENT AND SETTLEMENT at Subsection 3. VALUATION the following:

> Adjustment of the physical loss amount under this Policy will be computed as of the date of loss at the location of the loss, and for no more than the interest of the Insured, subject to the following:

> *               *               *

> L.  On all other property, the loss amount will not exceed the lesser of the following:

> 1)  The cost to repair.

> 2)  The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

> 3)  The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

> *               *               *

9.      The Policy provides at Section D. paragraph 4. LOSS CONDITIONS at Subpart E. APPRAISAL the following:

> If the Insured and the Company fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

> 1)  the Insured has fully complied with all provisions of this Policy, including REQUIREMENTS IN CASE OF LOSS; and

> 2)  the Company has received a signed and sworn proof of loss from the Insured.

7

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within 30 days then, on the request of the Insured or the Company, the umpire will be selected by a judge of a court of record in the jurisdiction in which the appraisal is pending. The appraisers will then appraise the amount of the loss, stating separately the Actual Cash Value and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage or if, for TIME ELEMENT loss, the amount of loss for each TIME ELEMENT coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two will determine the amount of loss.

The Insured and the Company will each:

    1)  pay its chosen appraiser; and

    2)  bear equally the other expenses of the appraisal and umpire.

A demand for APPRAISAL shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy, including as provided under REQUIREMENTS IN CASE OF LOSS.

The Company will not be held to have waived any of its rights by any act relating to appraisal.

By letter dated May 15, 2007 (prior to institution of suit), FMIC invoked the above clause and demanded appraisal. As the parties have failed to agree on the amount of loss, the matter should be referred to appraisal.

    10.   The Policy provides at Section D. 4. LOSS CONDITIONS Subpart F. SUIT AGAINST THE COMPANY the following:

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless:

    1)  the Insured has fully complied with all the provisions of this Policy;

#1208760 v1
106330-59824

\*          \*          \*

HHMI has not provided to FMIC a valid Sworn Proof of Loss as required by Section D.4. LOSS CONDITIONS Subpart A. REQUIREMENTS IN CASE OF LOSS and has failed to comply with FMIC's demand for Appraisal. As a result, HHMI cannot maintain this action.

11.    Venue is not appropriate in the Courts of Delaware.

## COUNTERCLAIM FOR DECLARATORY RELIEF
## UNDER THE POLICY'S APPRAISAL CLAUSE

FMIC brings this counterclaim for declaratory relief pursuant to the Policy's Appraisal clause and in support thereof avers as follows:

1.    The Policy contains an Appraisal clause as set forth in its entirety at Paragraph 9 above.

2.    By letter dated May 15, 2007, FMIC demanded appraisal under the terms and conditions of the Appraisal clause of the Policy as the parties had failed to agree on the amount of loss.  By letter dated June 4, 2007, FMIC identified its Appraiser as Jonathan Held, Held Associates, Inc.

3.    By letter dated June 5, 2007, counsel for HHMI objected to the demand for appraisal and enclosed a courtesy copy of the Complaint.  In the same letter HHMI identified its Appraiser as Russ Opferkuch, AON Horizon Consultants.

4.    The dispute between FMIC and HHMI over the amounts, if any, still owed by FMIC in connection with repairs to the studio building are pure questions of value and amount of loss and are, therefore, appropriate for disposition through the appraisal process.  Contrary to the averments in the Complaint, there are no legal issues or issues of coverage under the Policy that preclude appraisal at this time.

#1208760 v1
106330-59824

5.    Even if such coverage issues exist, appraisal is still appropriate to resolve the question of the difference in valuation of the repairs to the Studio Building.  Any coverage issues can be reserved for disposition thereafter.

WHEREFORE, Factory Mutual Insurance Company seeks a declaration of this Honorable Court that appraisal is appropriate at this time since:

1.    The parties have failed to agree on the amount of the loss;

2.    The dispute between the parties regarding the amount of additional loss, if any, is based on the actual cash value and replacement cost value of the repairs to the Studio Building as of the date of loss and are clearly within the terms of the Appraisal clause of the Policy;

3.    The Complaint filed by HHMI was filed solely to undermine FMIC's demand for appraisal and enforcement of the terms of the Policy;

4.    This matter should be stayed and the parties referred to appraisal to resolve the differences between them with respect to the actual cash value and replacement cost of the repairs to the Studio Building at the time of the loss; and

5.    FMIC prays that it be entitled to such other and further relief as may be just and appropriate.

PHILLIPS, GOLDMAN & SPENCE, P.A.

Robert S. Goldman, Esquire (#2508)
Lisa C. McLaughlin, Esquire (#3113)
1200 North Broom Street
Wilmington, DE  19806
(302) 655-4200

DATE:  July 16, 2007

- and -

10

#1208760 v1
106330-59824

Thomas S. Brown, Esquire
GIBBONS P.C.
1700 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
(215) 665-0400

Attorneys for Defendant,
Factory Mutual Insurance Company

11

## CERTIFICATE OF SERVICE

I, Robert S. Goldman, attorney for Defendant, hereby certify that on this the 16th day of

July, 2007, served Defendant's Answer and Affirmative Defenses to Plaintiff's Complaint upon

the following via U.S. Mail, First Class Delivery, postage prepaid:

David J. Baldwin, Esquire
Jennifer C. Wasson, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, DE 19801

Richard P. Lewis, Esquire
Marshall Gilinsky, Esquire
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020-1182

PHILLIPS, GOLDMAN & SPENCE, P.A.

Robert S. Goldman, Esquire #3113
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200

**EXHIBIT C**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HOWARD HUGHES MEDICAL INSTITUTE, | CIVIL ACTION NO. 07-420 |
| Plaintiffs, | |
| vs. | **AFFIDAVIT OF DEBORAH A. ALMO IN SUPPORT OF FACTORY MUTUAL INSURANCE COMPANY'S MOTION TO TRANSFER VENUE** |
| FACTORY MUTUAL INSURANCE COMPANY, | |
| Defendants. | |

Deborah A. Almo, being over eighteen years of age, and being duly sworn hereby deposes and says:

1.    I am the Operations Vice President and Operations Claims Manager of Factory Mutual Insurance Company, 2100 Reston Parkway, Suite 203, Reston, VA 20191.

2.    Factory Mutual Insurance Company ("Factory Mutual") has its principal place of business in Rhode Island, but maintains offices in several other states, including the Commonwealth of Virginia. However, Factory Mutual does not maintain an office in the State of Delaware.

3.    I have been told, and it is my belief, that Howard Hughes Medical Institute has its principal place of business in Maryland, but is incorporated in Delaware.

4.    Plaintiff Howard Hughes Medical Institute ("HHMI") purchased a property insurance policy through Factory Mutual covering the period of April 1, 2005 to April 1, 2006 (the "Policy"). The Policy specifically covered the building at issue, located in Ashburn, Virginia (the "Building").

5.     The negotiations surrounding the Policy took place at the loss location in Ashburn, Virginia, and the Policy was underwritten and issued from the Reston, Virginia office. Further, all claims payment processing was done at the Reston, Virginia office.

6.     At the time the Policy was issued, the Building was under construction. Turner Construction, a general contractor with offices in Virginia, was in charge of constructing the Building. All subcontractors utilized throughout were either from Virginia or nearby in Maryland.

7.     On February 5, 2006, the Building, still not completed, was damaged by a fire. At the time of the fire, the Building was approximately 63% complete.

8.     After the fire, HHMI and Turner Construction negotiated a "lump sum" contract to complete construction on the Building. At this time, the construction and repairs of the Building have been completed.

9.     To date, Factory Mutual has paid more than $3.5 million to repair all damage related to the February 5, 2006 fire. Despite this payment, during the claims process a dispute arose as to the value of the repairs. As a result, Factory Mutual invoked the Appraisal clause of the Policy and demanded appraisal.

10.    In response, HHMI filed the current action in the Superior Court of the State of Delaware in and for New Castle County, which Factory Mutual removed to the United States District Court for the District of Delaware.

11.    I have been informed by Factory Mutual's attorney, Thomas S. Brown, that no discovery has been exchanged at this time.

12.    Factory Mutual is authorized to do business in, and issues policies in every State in the United States, including Delaware. Factory Mutual does not do any more business, or issue any more policies, in Delaware than in any of the other fifty States.

13.    I am not aware of any potential witnesses residing in the State of Delaware, or of any relevant documents being kept in Delaware.  However, numerous potential witnesses reside in Virginia or Maryland and most of the relevant documents are located in Virginia.

Dated: July 26, 2007

Signed:

_____
Deborah A. Almo

Sworn to before me this 26 day of  July, 2007.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ALYSIA BUDD, Notary Public
City of Philadelphia, Phila. County
My Commission Expires November 29, 2008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HOWARD HUGHES MEDICAL INSTITUTE, | CIVIL ACTION NO. 07-420 (MPT) |
| Plaintiffs, | |
| vs. | |
| FACTORY MUTUAL INSURANCE COMPANY, | |
| Defendants. | |

### ORDER TRANSFERRING MATTER TO THE UNITED STATES DISTRICT
### COURT FOR THE NORTHERN DISTRICT OF VIRGINIA

This matter having been opened to the Court on the motion of Defendant Factory Mutual Insurance Company ("Factory Mutual"), by and through its attorneys, for an Order transferring this matter to the United States District Court for the Northern District of Virginia pursuant to 28 U.S.C. § 1404(a), and the Court having considered the papers in support of and any opposition to the Defendant's Motion to Transfer, having heard the arguments of counsel; and for good cause shown,

**IT IS** on this _____ day of _____, 2007;

**ORDERED** that this action shall be **TRANSFERRED** to the United States District Court for the Northern District of Virginia; and it is further

**ORDERED** that a copy of this Order shall be served on all counsel within seven (7) days of receipt by Defendant's counsel.

_____

## CERTIFICATE OF SERVICE

I, Robert S. Goldman, attorney for Defendant, hereby certify that on this the 27th day of

July, 2007, served the foregoing Defendant's Motion to Change Venue Forum Non Conveniens

upon the following via U.S. Mail, First Class Delivery, postage prepaid:

David J. Baldwin, Esquire
Jennifer C. Wasson, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, DE  19801

Richard P. Lewis, Esquire
Marshall Gilinsky, Esquire
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020-1182


PHILLIPS, GOLDMAN & SPENCE, P.A.

Robert S. Goldman (#2508)
1200 North Broom Street
Wilmington, DE  19806
(302) 655-4200
(302) 655-4210 Fax

#1210109 v2
106330-59824