## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HOWARD HUGHES MEDICAL INSTITUTE,

        Plaintiffs,

    vs.

FACTORY MUTUAL INSURANCE COMPANY,

        Defendants.

CIVIL ACTION NO. 07-420

## DEFENDANT, FACTORY MUTUAL INSURANCE COMPANY'S MOTION FOR A PROTECTIVE ORDER, PURSUANT TO FEDERAL RULE 26(c)

Factory Mutual Insurance Company, by its attorneys, Phillips, Goldman & Spence, PA hereby files this Motion for Protective Order Pursuant to Federal Rule 26(c) and in support thereof avers as follows:

1.      On June 4, 2007, Plaintiff, Howard Hughes Medical Institute, ("HHMI") filed the current action in the State Court of Delaware seeking damages under an insurance policy ("Policy") issued to it by defendant, Factory Mutual Insurance Company ("Factory Mutual") as a result of fire damage to a building owned by HHMI (the "Building") on February 5, 2006. A copy of the Complaint is attached hereto as Exhibit "A."

2.      On July 16, 2007, Factory Mutual filed its Answer to Complaint, which contained a Counterclaim demanding appraisal pursuant to the terms and conditions of the Policy. A copy of Factory Mutual's Answer to Complaint is attached hereto as Exhibit "B."

3.      Given the diversity of the parties, on July 3, 2007, Factory Mutual sought, and was granted, removal to the United States District Court for the District of Delaware.

4.    At the time of the fire, the Building was under construction, and approximately 63% complete. After the fire, HHMI and Turner Construction, the general contractor, negotiated a "lump sum" contract to repair those portions of the building damaged by the fire as well as construct those portions of the building which had not been constructed at the time of the fire. At this time, all construction at the Building is complete.

5.    There is no dispute in this case that the fire is a covered loss under the terms of the Policy, as Factory Mutual has already paid more than $3.5 million to repair the damages due to the February 5, 2006 fire. However, in the course of the claims process, a dispute arose as to the value of the fire damage repairs. Accordingly, on May 15, 2007, Factory Mutual demanded an appraisal pursuant to the Appraisal Clause of the Policy to resolve that dispute.

6.    On July 27, 2007, Factory Mutual filed a Motion to Transfer Venue. Thereafter, on July 31, 2007, HHMI served discovery requests on Factory Mutual, copies of which are attached hereto as Exhibit "C" and "D."

7.    Factory Mutual intends to file a Motion to Compel Appraisal under the Policy based on its Counterclaim and consistent with its pre-suit demand for an appraisal.

8.    Given Factory Mutual's belief that an appraisal could fully resolve all disputes in this case without litigation, it now seeks to stay discovery until the Motion to Compel Appraisal is filed and decided.

9.    The discovery being sought (discussed in Factory Mutual's supporting Brief) is not relevant to Factory Mutual's Motion to Compel Appraisal nor is it relevant to the valuation issues to be presented at appraisal.

10.    Further, given the preference for discovery disputes to be handled in the venue in which the case will be heard, Factory Mutual also requests such stay be in effect until the

pending Motion to Transfer Venue is decided as well, if resolution of the venue issue is necessary after the Motion to Compel Appraisal has been decided.

11.    Based on the foregoing and the arguments contained in the supporting Brief, Factory Mutual respectfully requests that its Motion for Protective Order staying discovery be granted.

DATE: August 30, 2007                    PHILLIPS, GOLDMAN & SPENCE, P.A.

By: _Robert S. Goldman_____
        Robert S. Goldman, Esquire (#2508)
        Lisa C. McLaughlin, Esquire (#3113)
        1200 North Broom Street
        Wilmington, DE  19806
        (302) 655-4200

        - and -

        Thomas S. Brown, Esquire
        Andrew B. Smith, Esquire
        GIBBONS P.C.
        1700 Two Logan Square
        18th and Arch Streets
        Philadelphia, PA  19103
        (215) 665-0400

        Attorneys for Defendant,
        Factory Mutual Insurance Company

**EXHIBIT A**

SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)

Effective: Jun 4 2007  7:58P
Transaction ID 15104728
Case No. 07C-06-062-RRC

COUNTY:  (N)   K   S          CIVIL ACTION NUMBER:

Civil Case Code **CDBT, CDEJ**          Civil Case Type: CDBT - Debt/Breach of Contract
CDEJ-Declaratory Judgment
[SEE REVERSE SIDE FOR CODE AND TYPE]

| Caption: | Name and Status of Party filing document: |
|---|---|
| HOWARD HUGHES MEDICAL INSTITUTE, <br><br> Plaintiff, <br><br> v. <br><br> FACTORY MUTUAL INSURANCE COMPANY, <br><br> Defendant. | HOWARD HUGHES MEDICAL INSTITUTE, Plaintiff <br><br> Document Type:[E.G.; COMPLAINT; ANSWER WITH COUNTERCLAIM] **Complaint** <br> Non-Arbitration X     eFile X <br> [CERTIFICATE OF VALUE MAY BE REQUIRED] <br><br> Arbitration __ Mediation __ Neutral Assessment __ <br> DEFENDANT (CIRCLE ONE) ACCEPT   REJECT <br><br> JURY DEMAND  YES _____ No _____ <br><br> TRACK ASSIGNMENT REQUESTED (CIRCLE ONE) <br> EXPEDITED  (STANDARD)  COMPLEX |
| ATTORNEY NAME(S): <br> David J. Baldwin (No. 1010) <br><br> FIRM NAME: <br> POTTER ANDERSON & CORROON LLP <br><br> ADDRESS: <br> Hercules Plaza - Sixth Floor <br> 1313 North Market Street <br> Wilmington, DE 19801 <br><br> TELEPHONE NUMBER: <br> Telephone: (302) 984-6000 <br><br> FAX NUMBER: <br> Telefax:  (302) 658-1192 <br><br> E-MAIL ADDRESS: dbaldwin@potteranderson.com | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS <br><br> EXPLAIN THE RELATIONSHIP(S): <br><br> OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT: <br><br> [IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE] |

THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED. THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.

## SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS) INSTRUCTIONS

**CIVIL CASE TYPE**
Please select the appropriate civil case code and case type (e.g., **CODE – AADM** and **TYPE – Administrative Agency**) from the list below. Enter this information in the designated spaces on the Case Information Statement.

| APPEALS | MISCELLANEOUS |
|---|---|
| AADM- Administrative Agency | MAAT - Appointment of Attorney |
| ACCP - Court of Common Pleas | MAFF - Application for Forfeiture |
| ACER - Certiorari | MCED - Cease and Desist Order |
| AFAM - Family Court | MCRO - Complaint Requesting Order |
| AIAB - Industrial Accident Board | MCTO - Consent Order |
| APSC - Public Service Commission | MHAC - Habeas Corpus |
| AUIB - Unemployment Insurance Appeal Board | MIND - Destruction of Indicia of Arrest |
| | MISS - Issuance of Subpoena/Material Witness |
| COMPLAINTS | MMAN - Mandamus |
| CAAA - Auto Arb Appeal * | MOUT - Out of State Deposition |
| CASB - Asbestos | MPOS - Writ of Possession |
| CATT - Foreign & Domestic Attachment | MPRO - Writ of Prohibition |
| CCCP - Transfer from CCP* | MROP - Petition for Return of Property |
| CCHA - Transfer form Chancery * | MROD - Road Resolution |
| CCON - Condemnation | MSAM - Satisfy Mortgage |
| CDBT - Debt/Breach of Contract * | MSOJ - Compel Satisfaction of Judgment |
| CDEF - Defamation * | MTAX - Tax Ditches |
| CDEJ - Declaratory Judgment | MVAC - Vacate Public Road |
| CEJM - Ejectment * | MSEM - Set Aside Satisfaction of Mortgage |
| CFJG - Foreign Judgment * | MSSS - Set Aside Sheriff's Sale |
| CINT - Interpleader | MSEL - Sell Real Estate for Property Tax |
| CLIB - Libel *. | MTOX - Hazardous Substance Cleanup |
| CMAL - Malpractice * | MCVP - Civil Penalty |
| CACT - Class Action | MREF - Tax Intercept |
| CPIA - Personal Injury Auto * | MGAR - Appointment of Guardianship |
| CPIN - Personal Injury * | MFOR - Intercept of Forfeited Money |
| CPRD - Property Damage * | MSET - Structured Settlement |
| CPRL - Products Liability * | |
| CRPV - Replevin | MORTGAGES |
| CSBI - Silicone Breast Implant | MORT - Mortgage |
| CTAX - Tax Appeal | |
| CFRD - Fraud Enforcement | MECHANICS LIENS |
| CSPD - Summary Proceedings Dispute | LIEN - Mechanics Lien * |
| | |
| INVOLUNTARY COMMITMENTS | OTHER |
| INVC- Involuntary Commitment | OTHR - Specify Type |

## * Case types subject to Arbitration Rule 16.1

### DUTY OF THE PLAINTIFF

Each plaintiff/counsel shall complete the attached Civil Case Information Statement (CIS) and file with the complaint.

### DUTY OF THE DEFENDANT

Each defendant/counsel shall complete the attached Civil Case Information Statement (CIS) and file with the answer and/or first responsive pleading.

Revised 8/05

EFiled: Jun 4 2007 7:58P
Transaction ID 15104728
Case No. 07C-06-062 RRC

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| HOWARD HUGHES MEDICAL INSTITUTE, | ) | CIVIL ACTION NO. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NON-ARBITRATION CASE |
| | ) | |
| FACTORY MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Howard Hughes Medical Institute ("Plaintiff" or "HHMI"), for its complaint against defendant, Factory Mutual Insurance Company ("Defendant" or "FM"), alleges, and states as follows:

### NATURE OF THE ACTION

1.     This is an action for breach of contract and declaratory judgment involving a $500,000,000 property insurance policy which FM sold to HHMI for the policy period from April 1, 2005 until April 1, 2006, bearing Policy No. LP591 (the "Policy").

2.     On February 5, 2006, Plaintiff suffered a fire loss at its Janelia Farm Research Campus located in Ashburn, Virginia. Plaintiff has provided FM with timely notice of the loss, as well as documentation regarding its covered losses caused by the fire (the "Janelia Farm Claim").

3.     Although Plaintiff has, as of February 2007, incurred covered losses of approximately $5.3 million, and has submitted a Sworn Statement in Partial Proof of Loss to that effect, FM has refused to honor its obligations under the Policy and, instead, has only paid Plaintiff slightly more than $3.5 million for the Janelia Farm Claim.

NYDOCS1-862908.2

4.    FM improperly has refused to advance or otherwise pay the outstanding sums (of approximately $1.75 million) owed to Plaintiff under the terms of the Policy.

5.    Plaintiff seeks a declaration that FM must pay the outstanding sums claimed by HHMI in its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, plus any additional soft costs, extra expense, interest or other losses covered under the Policy and incurred since February 2007.

6.    Plaintiff is an "Insured" and the Janelia Farm location is an "Insured Location" as those terms are used in the Policy.

7.    All premiums due under the Policy were paid in full.

8.    Plaintiff has complied with all terms, conditions and requirements for coverage in the Policy. No valid defenses to coverage exist under the Policy, or Defendant has waived all defenses to coverage under the Policy, or such defenses are the subject of an estoppel.

## THE PARTIES

9.    HHMI is a nonprofit medical research organization that employs hundreds of leading biomedical scientists working at the forefront of their fields. Through its grants program and other activities, HHMI is helping to enhance science education at all levels and maintain the vigor of biomedical science worldwide. HHMI has laboratories across the United States and grant programs throughout the world. HHMI is a Delaware corporation with its national headquarters in Chevy Chase, Maryland.

10.    Upon information and belief, FM is a corporation organized and existing under the laws of the State of Rhode Island, with its principal place of business in Johnston, Rhode Island.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to the Delaware Declaratory Judgments Act, 10 Del. C. § 6501 et.seq. (2007), which Plaintiff invokes seeking a determination of an actual controversy among the parties to this action, as set forth more fully below.

12.     This Court has jurisdiction over the Defendant because Defendant is either:  (a) licensed or authorized to do business in Delaware; or (b) transacting – or have transacted within the relevant time periods – the business of selling insurance in Delaware.

### HHMI's Insurance Policy

13.     The Policy that HHMI purchased from FM had policy limits of $500,000,000 and covered, among other things, real and personal property located at or near no fewer than 62 insured locations across the United States.

14.     The main coverage grant in the Property Damage section of the Policy (Section B) describes the insurance provided as follows:

> This Policy insures the following property, unless otherwise excluded elsewhere in this Policy, located at an Insured Location or within 1,000 feet thereof, to the extent of the interest of the Insured in such property.
>
> A.     Real Property, including new buildings and additions under construction at an Insured Location, in which the insured has an insurable interest.
>
> B.     Personal Property:
>
> 1)     Owned by the Insured.
>
> 2)     consisting of the Insured's interest as a tenant in improvements and betterments.  In the event of physical loss or damage, the Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.

3)    of officers and employees of the Insured.

4)    of others in the Insured's custody to the extent the Insured is under obligation to keep insured for physical loss or damage insured by this Policy.

5)    of others in the Insured's custody to the extent of the Insured's legal liability for physical loss or damage to Personal Property. The Company will defend that portion of any suit against the Insured that alleges such liability and seeks damages for such insured physical loss or damage. The Company may, without prejudice, investigate, negotiate and settle any claim or suit as the Company deems expedient.

This policy also insures the interest of contractors and subcontractors in insured property during construction at an Insured Location or within 1,000 feet thereof, to the extent of the Insured's legal liability for insured physical loss or damage to such property. Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any TIME ELEMENT coverage provided under this Policy.

15.    The Property Damage section of the Policy also includes various "Additional Coverages" via the following provisions:

G.    DEBRIS REMOVAL

This Policy covers the reasonable and necessary costs incurred to remove debris from an Insured Location that remains as a direct result of physical loss or damage insured by this Policy.

This Additional Coverage does not cover the costs of removal of:

1)    contaminated uninsured property; or

2)    the contaminant in or on uninsured property,

whether or not the contamination results from insured physical loss or damage. Contamination includes, but is not limited to, the presence of pollution or hazardous material.

\* \* \*

J.    DEMOLITION AND INCREASED COST OF CONTRUCTION

1)    This Policy covers the reasonable and necessary costs incurred, described in item 3 below, to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of buildings or structures at an Insured Location; provided:

a)    such law or ordinance is in force on the date of insured physical loss or damage; and

b)    its enforcement is a direct result of such insured physical loss or damage.

2)    This Additional Coverage does not cover loss due to any law or ordinance with which the Insured was required to comply had the loss not occurred.

3)    This additional Coverage, as respects the property insured in item 1 above, covers:

a)    the cost to repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

b)    the cost:

(i)    to demolish the physically undamaged portion for such property insured; and

(ii)    to rebuild it with materials and in a manner to satisfy such law or ordinance,

to the extent that such costs result when the demolition of the physically damaged insured property is required to satisfy such law or ordinance.

\* \* \*

M.    EXPEDITING COSTS

This Policy covers the reasonable and necessary costs incurred to pay for the temporary repair of insured damage

to insured property and to expedite the permanent repair or replacement of such damaged property.

This Additional Coverage does not cover costs:

1)      recoverable elsewhere in this Policy; or

2)      of [sic] permanent repair or replacement of damaged property.

\* \* \*

U.     PROFESSIONAL FEES

This Policy covers the actual costs incurred by the Insured, of reasonable fees payable to the Insured's accountants, architects, auditors, engineers, or other professionals and the cost of using the Insured's employees, for producing and certifying any particulars or details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from insured loss payable under this Policy for which the Company has accepted liability.

1)     This Additional Coverage will not include the fees and costs of attorneys, public adjusters, and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them nor the fees and costs of loss consultants who provide consultation on coverage or negotiate claims.

2)     This Additional Coverage is subject to the deductible that applies to the loss.

16.    The Time Element section of the Policy (Section C) describes the relevant

insurance provided in that section as follows:

1.     LOSS INSURED

A.     This Policy insured TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from physical loss or damage of the type insured by this Policy:

1)    to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES below;

2)    used by the Insured, or for which the Insured has contracted use;

3)    located at an Insured Location or within 1,000 feet of it, or as provided as TEMPORARY REMOVAL OF PROPERTY or OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION; or

4)    while at a MISCELLANEOUS PERSONAL PROPERTY Location and such Location is not a Dependent Time Element Location; or

5)    while in transit as provided by this Policy, and

6)    during the Periods of Liability described in this section.

* * *

C.    The amount of such recoverable expenses will not exceed the amount by which the loss has been reduced.

* * *

D.    RENTAL INSURANCE

1)    Measurement of Loss:

The recoverable RENTAL INSURANCE loss is the Actual Loss Sustained by the Insured of the following during the PERIOD OF LIABILITY:

a)    The fair rental value of any portion of the property occupied by the Insured;

b)    The income reasonably expected from rentals of unoccupied or unrented portions of such property; and

c)    The rental income from the rented portions of such property according to bona fide leases, contracts or agreements in force at the time of loss,

all not to include noncontinuing charges and expenses.

* * *

E.    SOFT COSTS

This Policy covers the Actual Loss Sustained incurred by the Insured of Soft Costs during the PERIOD OF LIABILITY arising out of the delay of completion of buildings and additions under construction directly resulting from physical loss or damage of the type insured to insured property under construction at an Insured Location.

1)    References and Application.  The following term(s) wherever used in this Policy means:

a)    Soft Costs:

Expenses over and above normal expenses at Locations undergoing renovation or in the course of construction limited to the following:

(i)    Construction loan fees – the additional cost incurred to rearrange loans necessary for the completion of construction, repairs of reconstruction including: the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

(ii)    Commitment fees, leasing and marketing expenses – The cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

(iii)    Additional fees – for architects, engineers, consultants, attorneys and accountant needed for the completion of construction, repairs or reconstruction.

(iv)    Carrying costs –property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

17.    The Loss Adjustment and Settlement section of the Policy (Section D) describes how covered losses under the Policy are to be measured, including the following relevant provisions:

3.    VALUATION

Adjustment of the physical loss amount under this Policy will be computed as of the date of loss at the location of the loss, and for no more than the interest of the Insured, subject to the following:

* * *

L. On all other property, the loss amount will not exceed the lesser of the following:

1) The cost to repair.

2) The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

3) The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

4) The selling price of real property or machinery and equipment, other than stock, offered for sale on the date of loss.

5) The cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

6) The increased cost of demolition, if any, resulting from loss covered by this Policy, if such property is scheduled for demolition.

7) The unamortized value of improvements and betterments, if such property is not repaired or replaced at the Insured's expense.

8) The Actual Case Value if such property is:

a) useless to the Insured; or

b) not repaired, replaced or rebuilt on the same or another site within two years from the date of loss.

The Insured may elect not to repair or replace the insured real and/or personal property lost, damaged or destroyed.

Loss settlement may be elected on the lesser of repair or replacements cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to the Insured's operations within two years from the date of loss. As a condition of collecting under this item, such expenditure must be unplanned as of the date of loss and be made at an Insured Location under this Policy. This item does not extend to DEMOLITION AND INCREASED COST OF CONTSTRUCTION.

18.     All requirements for coverage under the Policy have been met, and Defendants have no valid defenses to coverage.

**The Janelia Farm Claim and FM's Refusal
To Pay the Full Coverage Owed to HHMI**

19.     HHMI's Janelia Farm campus includes state-of-the-art laboratory facilities, a first-rate conference center and visitor housing, all specially designed to create a collegial environment for groundbreaking, interdisciplinary research.

20.     The campus includes short-term housing for conference attendees and long-term housing for visiting scientists working on campus.

21.     On December 9, 2002, HHMI entered into a contract with Turner Construction Company ("Turner") to construct the Janelia Farm campus, including a first-rate building with 21 studio apartments (the "Studio Building") to be used as long-term housing for visiting scientists and/or other staff at the Janelia Farm campus. Actual construction of the Studio Building commenced in December 2002.

22.     When HHMI bought the Policy from FM in April, 2005, the Janelia Farm location specifically was included as an "Insured Location," and the Policy specifically covered HHMI's interest in buildings and property that were under construction.

23.    After substantial progress had been made on the construction of the Studio Building, its was badly damaged in a fire on February 5, 2006. The fire also damaged buildings near or adjacent to the Studio Building.

24.    HHMI timely notified FM of the fire at the Janelia Farm campus, and representatives of FM personally inspected the damage within days of the fire.

25.    HHMI was assisted in its collection and preparation of materials in support of the Janelia Farm Claim by its insurance broker, Aon Risk Services ("Aon").

26.    FM was assisted in reviewing the documents and information submitted by HHMI and in adjusting the Janelia Farm Claim by Gilbane Building Company ("Gilbane").

27.    Beginning in February 2006, HHMI provided to FM and its representatives detailed information and documentation regarding the damage to the Studio Building, other property and the covered losses under the Policy, and participated in numerous meetings regarding the quantification of HHMI's covered losses.

28.    At the time of the fire, HHMI was relying on the housing space at the Studio Building for its operations at the Janelia Farm campus. Specifically, HHMI was depending on the timely completion of the construction, so that the housing space there could be used to accommodate visitors and staff that HHMI planned to locate in the Studio Building, once it was complete.

29.    The fire at the Studio Building and resulting delay in the completion of its construction made it likely that HHMI would lose the rental value of the planned apartments at the Studio Building once the campus opened, which would necessitate HHMI to incur extra expenses to house visitors and staff in alternate accommodations.

30.     Accordingly, it was critical to HHMI that the construction of the Studio Building resume and be completed as quickly as possible after the fire, to reduce HHMI's rental value and extra expense losses, and to try to put HHMI's planned use of the completed building back on track.

31.     Immediately after the fire, HHMI began discussions with Turner regarding the best way to keep the Janelia Farm project on track despite the damage caused by the fire, including negotiations of a project schedule for the reconstruction of the Studio Building and remediation of the fire damage.

32.     At all relevant times following the fire, FM was kept up to date regarding the discussions with Turner regarding the scope and cost to remediate and rebuild the Studio Building in the wake of the fire.

33.     In March, 2006, HHMI presented FM with the draft plans for the reconstruction of the Studio Building and discussed those plans with FM in detail during meetings at Janelia Farm on March 9 and 16, 2006. At those meetings, HHMI advised FM that is was imperative that construction resume as soon as possible, for the reasons described above, among others.

34.     Because HHMI needed the construction to be carried out with the same kind and quality of workmanship and materials with which it was started, because the price quoted by Turner in the lump sum proposal was reasonable for the work involved and because it was critical to HHMI that the construction of the Studio Building resume and be completed as quickly as possible after the fire, HHMI wanted to use Turner to complete the project that it had started, and which was being delayed by the fire and its aftermath.

35.    In or about the Spring of 2006, Turner Construction presented to HHMI a "lump sum" proposal to repair and remediate the damage caused by the fire and substantially complete the original planned construction of the Studio Building by December 31, 2006, using the same designs, contractors and materials as the original Studio Building project.

36.    Because it was essential that the Studio Building construction move forward and be completed as soon as possible after the opening of the Janelia Farm campus (which was set to occur during the summer of 2006), HHMI reached an agreement in principle with Turner, in or about June 2006, to proceed with construction under the "lump sum" proposal. FM was provided with the relevant details of the "lump sum" proposal shortly thereafter. The contract for the "lump sum" proposal was not signed by HHMI or Turner until several weeks after FM was given the details regarding the proposal, although that contract was retroactively dated as of February 6, 2006 – the day after the fire.

37.    Throughout the claim process, which continued though April 2007, HHMI continued to present FM with documents and information in support of the Janelia Farm Claim. These materials substantiated a claim for covered losses under the Policy of nearly $5.3 million.

38.    In a calculated attempt to cut and slash at the full amount owed to HHMI for the Janelia Farm Claim, FM's responded to HHMI's detailed claim presentation by disputing the extent to which the amounts claimed were truly necessary to repair the property or incurred as a result of the fire.

39.    FM did agree, however, that $3,558,579 was covered under the Policy, and has paid HHMI for that undisputed portion of the loss, leaving approximately $1.75 million unpaid.

40.    Approximately $1.1 million of the unpaid portion of the Janelia Farm Claim relates to "hard costs" incurred by HHMI under the "lump sum" contract with Turner, which FM asserts are not covered under the Policy.

41.    On May 18, 2007, HHMI submitted to FM a Sworn Statement in Partial Proof of Loss, verifying that it has incurred covered losses, as of February 2007, of $5,297,126. The Sworn Statement in Partial Proof of Loss further verifies that, after deductions for past payments and the $25,000 deductible, FM sill owes HHMI $1,738,547, for covered losses as of February 2007.

42.    FM has refused to pay the amount outstanding for the Janelia Farm Claim.

43.    FM's position is in violation of the terms and conditions in the Policy and its refusal to pay the remaining $1,738,547 of HHMI's covered losses constitutes a breach of said contract.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

44.    Plaintiff repeats and realleges paragraphs 1 through 43 of the Complaint as if fully set forth at length herein.

45.    FM is obligated to pay HHMI for all covered losses pursuant to the terms and conditions of the Policy.

46.    The Janelia Farm Claim, including the costs submitted for coverage by HHMI stemming from Turner's lump sum proposal, are covered under one or more of the provisions in the Policy quoted above.

47.    In breach of its obligations under the Policy, FM has failed and refused to pay HHMI the full amount claimed via its Sworn Statement in Partial Proof of Loss, dated May 18, 2007. As a result of FM's breach of its Policy, Plaintiff has incurred damages in the amount

of the unpaid portion of the claim, as well as consequential damages in the form of attorneys' fees, among other such damages.

48.    By reason of the foregoing, FM is liable to Plaintiff for damages, the exact amount to be proven at trial, including but not limited to, all unpaid amounts claimed by HHMI in its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, consequential damages, together with attorneys' fees, costs, and disbursements that have been incurred to date and which may be incurred by Plaintiff in connection with prosecuting this action to recover under its property insurance.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)

49.    Plaintiff repeats and realleges paragraphs 1 through 48 of the Complaint as if fully set forth herein.

50.    Plaintiff seeks declaratory judgment for the purpose of determining a question of actual controversy between the parties regarding the Policy.

51.    Defendant has refused to pay HHMI the full amount claimed via its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, despite the fact that Defendant has a legal obligation to make such payment.

52.    Defendant has denied that it has an obligation under the Policy to pay HHMI the full amount claimed via its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, and denial of this obligation creates an actual controversy that declaratory judgment will resolve.

WHEREFORE, Plaintiff prays for judgment as follows:

1.    With respect to the First Cause of Action for Breach of Contract, that this Court make and enter a judgment for breach of contract against FM awarding compensatory

damages in an amount established by the evidence, including all sums claimed by Plaintiff in its

Sworn Statement in Partial Proof of Loss, dated May 18, 2007, plus any additional soft costs,

extra expense or other losses covered under the Policy and incurred since February 2007, as well

as all other damages caused by or resulting from FM's breach, including consequential damages;

    2.   With respect to the Second Cause of Action for Declaratory Judgment,

that this Court make and enter a declaratory judgment that FM must pay all sums claimed by

Plaintiff in its Sworn Statement in Partial Proof of Loss, dated May 18, 2007, plus any additional

soft costs, extra expense or other losses covered under the Policy and incurred since February

2007, as well as all other damages caused by or resulting from FM's breach, including

consequential damages;

    3.   With respect to all Causes of Action, that this Court:

      a.   pursuant to 18 Del. Code §4102, award Plaintiff all reasonable

attorneys' fees for this action against FM upon Plaintiff's policy of property insurance;

      b.   award to Plaintiff pre-judgment and post-judgment interest and

costs, as provided by law;

      c.   provide such other relief as the Court may deem just and proper.

*Of Counsel:*

Richard P. Lewis
Marshall Gilinsky
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020-1182
(212) 278-1000

Dated: June 4, 2007
799106/31904

POTTER ANDERSON & CORROON LLP

By   *David J. Baldwin*

David J. Baldwin (No. 1010)
Jennifer C. Wasson (No. 4933)
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
(302) 984-6017

*Attorneys for Plaintiff Howard Hughes Medical Institute*

EFiled: Jun 4 2007 7:58P
Transaction ID 15104728
Case No. 07C-06-062 RRC

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| HOWARD HUGHES MEDICAL INSTITUTE, | ) | CIVIL ACTION NO. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NON-ARBITRATION CASE |
| | ) | |
| FACTORY MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF NON-ARBITRATION

I, David J. Baldwin, Attorney for Plaintiff, hereby certify in good faith at this time, that, in my opinion, this is an action for declaratory judgment and breach of contract in which the damages are in excess of One Hundred Thousand Dollars ($100,000.00), exclusive of costs and interest, and that this action is therefore excepted from compulsory arbitration pursuant to Superior Court Civil Rule 16.1(a).

*Of Counsel:*

Richard P. Lewis
Marshall Gilinsky
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020-1182
(212) 278-1000

Dated: June 4, 2007
799360/31904

POTTER ANDERSON & CORROON LLP

By: *David J Baldwin*

David J. Baldwin (No. 1010)
Jennifer C. Wasson (No. 4933)
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
(302) 984-6017

*Attorneys for Plaintiff Howard Hughes Medical Institute*

**EXHIBIT B**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HOWARD HUGHES MEDICAL INSTITUTE,    :
    :
        Plaintiff,    :
    :    Civil Action No. 07-420
    v.    :
    :
FACTORY MUTUAL INSURANCE COMPANY, :
    :
        Defendant.    :

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant, Factory Mutual Insurance Company (hereinafter "FMIC") hereby responds to the correspondingly numbered paragraphs of Plaintiff's Complaint as follows:

### NATURE OF THE ACTION

1.    Denied as stated. It is admitted only that FMIC issued to Plaintiff, Howard Hughes Medical Institute (hereinafter "HHMI") Policy No. LP591 with effective dates April 1, 2005 to April 1, 2006 (hereinafter the "Policy").

2.    Denied as stated. It is admitted only that Plaintiff suffered a fire loss at its Janelia Farm Research Campus, Ashburn, Virginia on or about February 5, 2006 and that the loss was reported to FMIC.

3.    Denied. It is admitted only that FMIC has made payments to HHMI totaling $3,558,579, the full measure of the loss covered by the Policy.

4.    Denied. FMIC has reimbursed HHMI for all of its losses sustained as a result of the fire under the terms of the Policy.

5.    Denied as stated. It is admitted only that Plaintiff's Complaint seeks the recovery of additional sums which HHMI alleges to be payable under the Policy.

6.     Admitted.

7.     Admitted.

8.     Denied. As set forth in the Counterclaim of FMIC, prior to the institution of suit FMIC demanded appraisal pursuant to the terms and conditions of the Policy. The remaining averments of Paragraph 8 are denied. In addition, HHMI has failed to produce documents for examination at the request of FMIC in support of its claim, including those related to the scope of the repair work and quotations and invoices associated with the work of subcontractors.

9.     Denied. After reasonable investigation, FMIC is without knowledge or information sufficient to form a belief as to the averments of Paragraph 9 and therefore denies same and demands proof thereof at trial.

10.     Admitted.

11-12. Denied. FMIC filed a Notice of Removal, removing this matter to the District Court of Delaware. Further, neither the Delaware State Court nor the District Court of Delaware is the appropriate venue for this matter.

13-17. Denied as stated. The Policy, being a writing, speaks for itself.

18.     Denied for the reasons set forth in answer to Paragraph 8 above.

19-21. Denied. After reasonable investigation, FMIC is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraphs 19-21 of HHMI's Complaint and therefore denies same and demands proof thereof at trial.

22.     Denied. The Policy, being a writing, speaks for itself.

23.     Denied as stated. It is admitted only that the Studio Building at the Janelia Farm complex was damaged by fire on February 5, 2006 and that construction on the building was not complete at the time of the fire.

#1208760 v1
106330-59824

24.     Denied as stated.  It is admitted that the notice of the loss was given timely.

25.     Denied.  It is admitted only that a company called Aon Claims Consulting assisted HHMI after the fire.

26-27. Denied as stated.   It is admitted that Gilbane Building Company ("Gilbane") assisted FMIC in reviewing documents submitted to it after the fire.  It is denied that all of the relevant information requested by FMIC and/or Gilbane was provided by HHMI or its representatives.

28-31. Denied.   FMIC, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraphs 28-31 and therefore denies same and demands proof thereof at trial.

32-33. Denied. To the contrary, FMIC was not advised of the lump sum agreement with Turner Construction Company until after that agreement had been finalized.  By way of further answer, FMIC, upon learning of the lump sum agreement with Turner Construction Company immediately advised HHMI that it did not agree with the scope of and cost of the proposed repairs.

34-35. Denied.   FMIC, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 34 and therefore denies same and demands proof thereof at trial.

36.     Denied.   FMIC, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 36 and therefore denies same and demands proof thereof at trial.  By way of further answer, at no time did FMIC express its agreement with the lump sum proposal nor did it ever receive all of the supporting documentation for, inter alia, subcontractor work as requested by it.

#1208760 v1
106330-59824

37.    Denied.    To the contrary, FMIC was never presented with all of the claim documentation requested by it.  By way of further answer, FMIC has paid to HHMI the sum of $3,558,579, the full amount required to restore the building to its pre-fire condition pursuant to the terms and conditions of the Policy.

38.    Denied.  By way of further answer, FMIC has paid to HHMI $3,558,579, the full and final payment of all amounts due under the Policy as a result of the fire to restore the building to its pre-fire condition.  .

39.    Denied.  By way of further answer, FMIC has paid to HHMI $3,558,579, the full and final payment of all amounts due under the Policy as a result of the fire to restore the building to its pre-fire condition.

40.    Denied.  There are no further monies due under the Policy to HHMI as a result of the fire.

41.    Denied as stated.  It is admitted only that HHMI submitted to FMIC a sworn statement in proof of loss.  The proof of loss was rejected by FMIC by letter dated June 4, 2007.  By way of further answer, FMIC has paid to HHMI the full amount of damages to which it is entitled under the terms and conditions of the Policy as a result of the fire.

42.    Denied for the reasons set forth in Paragraph 41 above.

43.    Denied.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

44.    FMIC incorporates by reference its answers to Paragraphs 1 through 43 above as though fully set forth herein.

#1208760 v1
106330-59824

45-48. Denied. By way of further answer, FMIC has paid to HHMI $3,558,579, the full and final payment of all amounts due under the Policy as a result of the fire to restore the building to its pre-fire condition.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)

49.    FMIC incorporates by reference its answers to Paragraphs 1 through 48 above as though fully set forth herein.

50-52. Denied. By way of further answer, FMIC has paid to HHMI $3,558,579, the full and final payment of all amounts due under the Policy as a result of the fire to restore the building to its pre-fire condition.

WHEREFORE,

1.    Factory Mutual Insurance Company prays that Plaintiff's First Cause of Action for Breach of Contract be dismissed, with prejudice and that it may have such other and further relief as may be just and appropriate;

2.    That Plaintiff's Second Cause of Action for Declaratory Judgment be dismissed, with prejudice as there are no additional monies owed to HHMI under the terms and conditions of the Policy as a result of the fire or otherwise;

3.    That Plaintiff's request for attorneys fees and costs; pre-judgment and post-judgment interest and other relief be dismissed, with prejudice.

## AFFIRMATIVE DEFENSES

1.    HHMI has failed to state a claim against FMIC upon which relief can be granted.

2.    HHMI has failed to state a claim under the Policy upon which relief can be granted.

3.    The claims of HHMI are barred by the terms and conditions of the Policy.

5

4. FMIC has paid to HHMI all monies to which it is entitled under the terms and conditions of the Policy arising out of the fire loss of February 5, 2006.

5. The lump sum agreement between HHMI and Turner Construction Company did not merely restore the Studio Building to the condition it was in immediately prior to the fire but, rather, resulted in the construction of portions of the building that had not been constructed prior to February 5, 2006 and, therefore, were not part of the fire damage. FMIC is only obligated by the terms and conditions of the Policy to restore the building to its pre-fire condition.

6. HHMI breached that Section of the Policy entitled 4. LOSS CONDITIONS, A. REQUIREMENTS IN CASE OF LOSS which provides as follows:

The insured will:

\*           \*           \*

6) further, the Insured, will as often as may be reasonably required:

\*           \*           \*

c) produce for examination at the request of the Company:

(i) all books of accounts, business records, bills, invoices and other vouchers; or

(ii) certified copies if originals are lost,

at such reasonable times and places that may be designated by the Company or its representative and permit extracts and machine copies to be made.

7. The Policy further provides at Section 3. ADDITIONAL COVERAGES, Subpart M. EXPEDITING COSTS, the following:

This Policy covers the reasonable and necessary costs incurred to pay for the temporary repair of insured damage to insured property and to expedite the permanent repair or replacement of such damaged property.

This Additional Coverage does not cover costs:

6

        1)  recoverable elsewhere in this Policy; or

        2)  of permanent repair or replacement of damaged property.

Certain of the amounts claimed by HHMI under the Policy are neither reasonable nor necessary costs for temporary repair or are recoverable elsewhere in the Policy or relate to permanent repair or replacement of the Studio Building.

    8.     The Policy provides at Section D. LOSS ADJUSTMENT AND SETTLEMENT at Subsection 3. VALUATION the following:

> Adjustment of the physical loss amount under this Policy will be computed as of the date of loss at the location of the loss, and for no more than the interest of the Insured, subject to the following:
>
>        *        *        *
>
> L.  On all other property, the loss amount will not exceed the lesser of the following:
>
>     1)  The cost to repair.
>
>     2)  The cost to rebuild or replace on the same site with new materials of like size, kind and quality.
>
>     3)  The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.
>
>        *        *        *

    9.     The Policy provides at Section D. paragraph 4. LOSS CONDITIONS at Subpart E. APPRAISAL the following:

> If the Insured and the Company fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:
>
>     1)  the Insured has fully complied with all provisions of this Policy, including REQUIREMENTS IN CASE OF LOSS; and
>
>     2)  the Company has received a signed and sworn proof of loss from the Insured.

#1208760 v1
106330-59824

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within 30 days then, on the request of the Insured or the Company, the umpire will be selected by a judge of a court of record in the jurisdiction in which the appraisal is pending. The appraisers will then appraise the amount of the loss, stating separately the Actual Cash Value and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage or if, for TIME ELEMENT loss, the amount of loss for each TIME ELEMENT coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two will determine the amount of loss.

The Insured and the Company will each:

    1) pay its chosen appraiser; and

    2) bear equally the other expenses of the appraisal and umpire.

A demand for APPRAISAL shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy, including as provided under REQUIREMENTS IN CASE OF LOSS.

The Company will not be held to have waived any of its rights by any act relating to appraisal.

By letter dated May 15, 2007 (prior to institution of suit), FMIC invoked the above clause and demanded appraisal. As the parties have failed to agree on the amount of loss, the matter should be referred to appraisal.

10.    The Policy provides at Section D. 4. LOSS CONDITIONS Subpart F. SUIT AGAINST THE COMPANY the following:

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless:

    1) the Insured has fully complied with all the provisions of this Policy;

8

\*          \*          \*

HHMI has not provided to FMIC a valid Sworn Proof of Loss as required by Section D.4. LOSS CONDITIONS Subpart A. REQUIREMENTS IN CASE OF LOSS and has failed to comply with FMIC's demand for Appraisal. As a result, HHMI cannot maintain this action.

11.    Venue is not appropriate in the Courts of Delaware.

## COUNTERCLAIM FOR DECLARATORY RELIEF UNDER THE POLICY'S APPRAISAL CLAUSE

FMIC brings this counterclaim for declaratory relief pursuant to the Policy's Appraisal clause and in support thereof avers as follows:

1.    The Policy contains an Appraisal clause as set forth in its entirety at Paragraph 9 above.

2.    By letter dated May 15, 2007, FMIC demanded appraisal under the terms and conditions of the Appraisal clause of the Policy as the parties had failed to agree on the amount of loss. By letter dated June 4, 2007, FMIC identified its Appraiser as Jonathan Held, Held Associates, Inc.

3.    By letter dated June 5, 2007, counsel for HHMI objected to the demand for appraisal and enclosed a courtesy copy of the Complaint. In the same letter HHMI identified its Appraiser as Russ Opferkuch, AON Horizon Consultants.

4.    The dispute between FMIC and HHMI over the amounts, if any, still owed by FMIC in connection with repairs to the studio building are pure questions of value and amount of loss and are, therefore, appropriate for disposition through the appraisal process. Contrary to the averments in the Complaint, there are no legal issues or issues of coverage under the Policy that preclude appraisal at this time.

9

5.    Even if such coverage issues exist, appraisal is still appropriate to resolve the question of the difference in valuation of the repairs to the Studio Building. Any coverage issues can be reserved for disposition thereafter.

WHEREFORE, Factory Mutual Insurance Company seeks a declaration of this Honorable Court that appraisal is appropriate at this time since:

1.    The parties have failed to agree on the amount of the loss;

2.    The dispute between the parties regarding the amount of additional loss, if any, is based on the actual cash value and replacement cost value of the repairs to the Studio Building as of the date of loss and are clearly within the terms of the Appraisal clause of the Policy;

3.    The Complaint filed by HHMI was filed solely to undermine FMIC's demand for appraisal and enforcement of the terms of the Policy;

4.    This matter should be stayed and the parties referred to appraisal to resolve the differences between them with respect to the actual cash value and replacement cost of the repairs to the Studio Building at the time of the loss; and

5.    FMIC prays that it be entitled to such other and further relief as may be just and appropriate.

PHILLIPS, GOLDMAN & SPENCE, P.A.

Robert S. Goldman, Esquire (#2508)
Lisa C. McLaughlin, Esquire (#3113)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200

DATE: July 16, 2007

- and -

10

#1208760 v1
106330-59824

Thomas S. Brown, Esquire
GIBBONS P.C.
1700 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
(215) 665-0400

Attorneys for Defendant,
Factory Mutual Insurance Company

11

## CERTIFICATE OF SERVICE

I, Robert S. Goldman, attorney for Defendant, hereby certify that on this the 16th day of

July, 2007, served Defendant's Answer and Affirmative Defenses to Plaintiff's Complaint upon

the following via U.S. Mail, First Class Delivery, postage prepaid:

David J. Baldwin, Esquire
Jennifer C. Wasson, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, DE  19801

Richard P. Lewis, Esquire
Marshall Gilinsky, Esquire
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020-1182

PHILLIPS, GOLDMAN & SPENCE, P.A.

Robert S. Goldman, Esquire #3113
1200 North Broom Street
Wilmington, DE  19806
(302) 655-4200

#1208760 v1
106330-59824

**EXHIBIT C**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HOWARD HUGHES MEDICAL INSTITUTE,  )
　　　　　　　　　　　　　　　　　 )
　　　　　　　　Plaintiff,　　　　 )
　　　　　　　　　　　　　　　　　 )　　CIVIL ACTION NO.  07-420***
　　　　v.　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
FACTORY MUTUAL INSURANCE COMPANY, )
　　　　　　　　　　　　　　　　　 )
　　　　　　　　Defendant.　　　　 )
　　　　　　　　　　　　　　　　　 )

## HOWARD HUGHES MEDICAL INSTITUTE'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure Rule 26 and Rule 33, Howard Hughes Medical Institute ("Plaintiff" or "HHMI"), by their undersigned attorneys, hereby propounds the following First Set of Interrogatories upon Defendant, Factory Mutual Insurance Company ("Defendant" or "Factory Mutual") in the above-captioned action.  Factory Mutual is to respond in writing to this request within 30 days of service.

### INSTRUCTIONS

1.　　　Whenever in these Interrogatories Factory Mutual is asked to identify a person, please state such person's full name, present or last known residence and business addresses and telephone numbers.

2.　　　Whenever in these Interrogatories Factory Mutual is asked to identify a Document, please state the type of Document, its date or approximate date, the author, persons who received copies, the custodian and, if the Document is no longer in Factory Mutual's possession, whether it is missing, has been transferred or has been destroyed.

3.　　　If You object to answering any Interrogatory, whether in whole or part, on the grounds that the information sought therein is privileged or confidential, then you shall describe the factual or legal basis for your claim of privilege or objection in sufficient detail to permit the

Court to determine the validity or the claim or privilege or objection. You also shall answer any portion of any Interrogatory to which You do not object. Additionally, You shall identify the privilege claimed, as well as each statement or communication for which such privilege is claimed, together with the following information with respect to each such statement or communication:

       (a)    the date when the communication was made;

       (b)    the name of the person who made the communication and that person's employer, office location, department and position;

       (c)    the name of each person to whom the communication was made and each such person's employer, office location, department and position at the time the communication was made;

       (d)    the name of any other person present at the time the communication was made and each such person's employer, office location, department and position at the time the communication was made;

       (e)    a general statement describing the subject matter of the communication; and

       (f)    the basis of the claim of privilege or objection.

    4.    Each Interrogatory is continuing in nature and requires further and supplemental answers.

## DEFINITIONS

1.    As used in these Interrogatories, the "Complaint" shall mean the Complaint filed by HHMI in this action, dated June 4, 2007.

2.    As used in these Interrogatories, the "Answer" shall mean the Answer filed by Factory Mutual in this action, dated July 16, 2007.

3.    "HHMI" or "Plaintiff" shall mean the Plaintiff in the above-referenced action, as well as any of its corporate affiliates, divisions, subgroups, subsidiaries, parent corporations, predecessors, successors, assignees, agents, legal representatives, trustees, consultants, and all representatives and other persons acting on its behalf, and its present and former officers, directors, trustees and employees.

4.    As used in these Interrogatories, "Factory Mutual," "You," "Your" or "Defendant" shall mean Factory Mutual Insurance Company, as well as any of its affiliates, subsidiaries, predecessors, agents, employees, representatives and all other persons acting on its behalf or for its benefit in connection with the matters alleged in the Complaint.

5.    As used in these Interrogatories, the "Policy" shall mean the Howard Hughes Medical Institute Property Loss Policy, No. LP591, covering the period of April 1, 2005 through April 1, 2006.

6.    As used in these Interrogatories, the "Janelia Farm Fire" shall mean the February 5, 2006 fire at HHMI's Janelia Farm Research Campus located in Ashburn, Virginia, referred to in ¶ 2 of the Complaint.

7.    As used in these Interrogatories, the "Insurance Claim" shall mean HHMI's insurance claim under the Policy for its losses from the Janelia Farm Fire.

8.    As used in these Interrogatories, "Document" means, without limitation, the original and all copies and translations of any information in any written, recorded, graphic or

electronic form, including all memoranda of oral conversations, as well as all compilations,

catalogs, and summaries of information or data, whether typed, handwritten, printed, recorded,

digitally coded, or otherwise produced or reproduced, and shall include, without limitation, each

and every note, memorandum, letter, email, telegram, publication, telex, circular, release, article,

book, report, prospectus, record, financial statement, computer disc, computer tape, microfilm,

microfiche, microform, index, list, claims file, analysis chart, money order, account book, draft,

summary, diary, transcript, agreement, calendar, graph, receipt, chart, business record, insurance

policy, computer printout, contract, and order.  "Document" also means any tape or audible

recording, any photograph, motion picture, or videotape, and any non-identical copy thereof,

either by virtue of other material appearing thereon, such as handwriting or typewriting, or

otherwise.

      9.     As used in these Interrogatories, "Communication" shall mean every manner or

means of disclosure, transfer or exchange or information, whether orally or by document,

whether face-to-face, by telephone, telecopy, e-mail, fax, mail, personal delivery or otherwise.

      10.    As used in these Interrogatories, "person" or "persons" shall mean any natural

person, business entity, corporation, cooperative, bureau, public corporation, partnership, joint

venture, group, club, association, institute, society, office, organization, and any governmental or

administrative entity or department, agency, bureau, or political subdivision thereof.

      11.    As used in these Interrogatories, "concerning" shall mean referring to, describing,

evidencing, pertaining to, consisting of, constituting, reflecting, relating to, or in any way

logically or factually connected with the matter discussed.

      12.    As used in these Interrogatories, the "Expediting Costs Provision" shall mean the

provision found at Section B.3.M. of the Policy.

13.     As used in these Interrogatories, the "Expense To Reduce Loss Provision" shall mean the provision found at Section C.1.C. of the Policy.

14.     As used in these Interrogatories, the "Rental Insurance Provision" shall mean the provision found at Section C.2.D. of the Policy.

15.     As used in these Interrogatories, the "Soft Costs Provision" shall mean the provision found at Section C.4.E. of the Policy.

16.     As used in these Interrogatories, the "Lump Sum Proposal" shall mean the post-loss construction proposal referred to in ¶¶ 35-36 of the Complaint.

17.     As used in these Interrogatories, the "Studio Building" shall mean the building referred to as such in ¶ 21 of the Complaint.

18.     As used in these Interrogatories, the "Revised Cost Binder" shall mean the binder sent by Tracy Howard (on behalf of HHMI) to Gregory Oczkowski (on behalf of Factory Mutual) on November 21, 2006.

19.     As used in these Interrogatories, "Claims Manuals" shall mean, without limitation, instructional materials, guidelines, procedures, best practices or other Documents, used by Factory Mutual for guidance, reference or training in the handling of claims or measurement, calculation or quantification of losses under property insurance policies.

20.     As used in these Interrogatories, "Underwriting Manuals" shall mean, without limitation, instructional materials, guidelines, procedures, best practices or other Documents, used by Factory Mutual for guidance, reference or training the underwriting of property insurance policies.

21.     "Claims File" or "Claims Files" shall mean the collection of materials and/or information assembled or examined or referred to by Defendant in response to HHMI's claim for

insurance coverage for the Janelia Farm Fire and during the handling, investigating, adjusting of and response to that claim for insurance coverage, including any materials and data and/or information stored electronically.

22.    "Underwriting File" shall mean the collection of materials and/or information assembled, examined or referenced by Defendant during the process of underwriting the Policy.

23.    Whenever the context in which words used in these Interrogatories indicates or suggests that such is the intent, the word "any" includes "all" and "each" and the word "all" includes "any."

24.    Whenever the context in which words used in these Interrogatories indicates or suggests that such is the intent, the word "and" and "or" shall mean "and/or."

25.    Whenever the context in which the words used in these Interrogatories indicates or suggests that such is the intent, the past tense includes the present tense, and the present tense includes the past tense.

26.    Whenever the context of words used in these Interrogatories indicates or suggests that such is the intent, words in the singular shall include the plural, and vice versa, and words in the masculine, feminine or neuter shall include each of the other genders.

## INTERROGATORIES

1.    Identify any Person, including attorneys, who was in any way involved in drafting, underwriting, issuing or selling the Policy, and describe the role each Person performed in such process.

2.    Identify any Person who was any way involved in the drafting, underwriting or selling any insurance policy Factory Mutual sold to HHMI or which provides coverage to HHMI, and describe the role each Person performed in such process.

3.      Identify any Person who was or is in any way involved in Factory Mutual's decision-making process in evaluating the nature and/or extent of the insurance coverage provided under the Policy for the Insurance Claim, and describe the role each Person performed or performs in such process.

4.      Identify any Person who was in any way involved in the drafting, editing, updating or revising of any and all Underwriting Manuals concerning property insurance, and describe the role each Person performed in such process.

5.      Identify any Person who was in any way involved in the drafting, editing, updating or revising of any and all Claims Manuals concerning property insurance claims, and describe the role each Person performed in such process.

6.      Identify any Person who was in any way involved in Communications with any broker or agent who was in any way involved in the issuance or sale of the Policy or any other policy sold by Factory Mutual to HHMI or which provides coverage to HHMI, and describe the role each Person performed in said process.

7.      Identify by name, address, affiliation and title each Person known to Factory Mutual or counsel to be a witness Concerning the facts of this case, including the Persons involved in, or with knowledge of, the drafting, underwriting, issuance or sale of the Policy and the investigation, adjustment and handling of the Insurance Claim.  For each such Person, please set forth a summary sufficient to inform HHMI of the facts known to or observed by such witness, and indicate whether a statement has been provided by said witness.

8.      Identify by name, address, title and affiliation each Person You will, or expect, to call as a witness at the trial of this matter.

9. Set forth all facts and circumstances and Identify all Documents which You contend support any of the allegations in the Complaint and each of Your affirmative defenses to HHMI's Complaint.

10. Identify, by Bates number, Your Claims File for the Insurance Claim.

11. Identify, by Bates number, Your Underwriting File for the Policy.

12. Identify the name and current address of each Person responsible for supplying the information used to respond to HHMI's First Set of Document Demands to Factory Mutual and these Interrogatories.

13. State whether or not HHMI is entitled to any coverage for the Insurance Claim under the Expediting Costs, Expense To Reduce Loss or Soft Costs Provisions of the Policy.

14. Identify each provision of the Policy under which You concede that HHMI is entitled to some amount of coverage for the Insurance Claim, summarize the facts applicable to the coverage under that provision, and the dollar amount of the coverage You concede HHMI is owed under that provision.

15. If Factory Mutual contends that HHMI is not entitled to coverage for the full amount of the "Hard Costs" that HHMI presented for coverage as part of the Insurance Claim, as reflected in Item 66 of the Revised Cost Binder, state the reason(s) for Factory Mutual's position.

16. Identify what exclusions in the Policy You contend apply to any part of the Insurance Claim, and all facts Concerning application of said exclusions to the Insurance Claim.

17.    Describe the extent to which Factory Mutual considered the Expediting Costs Provision as a justification for HHMI's decision to go forward with the Lump Sum Proposal and Identify every Person who was involved in such considerations.

18.    Describe what Factory Mutual did to investigate the extent to which HHMI's acceptance of the Lump Sum Proposal expedited the repair or replacement of the property damaged in the Janelia Farm Fire and Identify every Person who was involved in such investigation.

19.    Describe what Factory Mutual did to investigate the extent to which HHMI's acceptance of the Lump Sum Proposal reduced the loss otherwise payable under the time element section of the Policy.

20.    Describe what Factory Mutual did to investigate:  (i) the actual loss sustained by HHMI under the Rental Insurance Provision; (ii) the actual loss that would have been sustained had HHMI not accepted the Lump Sum Proposal; and/or (iii) the fair rental value of any portion of the Studio Building during the period of liability applicable to the Rental Insurance Provision.  Identify every Person who was involved in such investigation(s).

Dated:   July 31, 2007

*Of Counsel:*

Richard P. Lewis
Marshall Gilinsky
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020-1182
(212) 278-1000

POTTER ANDERSON & CORROON LLP

By _____
David J. Baldwin (No. 1010)
Jennifer C. Wasson (No. 4933)
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, Delaware  19801
(302) 984-6017
E-mail:  dbaldwin@potteranderson.com
              jwasson@potteranderson.com

*Attorneys for Plaintiff Howard Hughes Medical Institute*

810140                                                       NYDOCS1-867297.3

–9–

**EXHIBIT D**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT DELAWARE

HOWARD HUGHES MEDICAL INSTITUTE,

        Plaintiff,

        v.

FACTORY MUTUAL INSURANCE COMPANY,

        Defendant.

)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.  07-420***

## HOWARD HUGHES MEDIAL INSTITUTE' S FIRST
## REQUEST FOR PRODUCTION OF DOCUMENTS

PLEASE TAKE NOTICE that pursuant to Rule 34, Plaintiff, Howard Hughes

Medical Institute ("Plaintiff" or "HHMI"), by its undersigned attorneys, hereby makes the

following Request for the Production of Documents to Defendant, Factory Mutual Insurance

Company ("Defendant" or "Factory Mutual"), in the above-captioned action.  Defendant is to

respond to this request within 30 days of service.

## INSTRUCTIONS

1.      These Document Requests are of a continuing nature.  If Defendant

acquires possession, custody or control of any additional Documents responsive to any request

after the service of its responses thereto, Defendant shall promptly furnish such Documents to

the undersigned attorneys.  HHMI expressly reserves its rights to issue further Document

Requests in the course of this proceeding.

2.      If any Document requested was, but no longer is, in Defendant's

possession, custody or control, state the subject matter of the Document, what disposition was

made of it, and the date or dates upon which such disposition was made, and additionally,

produce all Documents relating to the disposition of such Document.

3.     If Defendant objects to any request (or portion thereof), state in detail the reason for the objection.

4.     If any Documents called for by these requests are withheld under a claim of privilege, furnish a list setting forth the following for each Document as to which privilege is claimed:

      (i)     the nature of the privilege asserted;

      (ii)     the type of document;

      (iii)     the general subject matter of the document;

      (iv)     the date of the document;

      (v)     the author(s) of the document;

      (vi)     all addressees and distributees of the document;

      (vii)     the relationship of the authors to the addressee(s) or distributee(s);

      (viii)     all other persons who have seen the document or been informed of its contents; and

      (ix)     such other information as is sufficient to identify the document for a subpoena duces tecum.

5.     Regardless of whether any of these Document Requests, instructions and/or definitions use a term in the plural or singular form, the term shall be construed in both the singular and plural forms, as is necessary to require the most inclusive response.

## DEFINITIONS

1.     "HHMI" or "Plaintiff" shall mean the Plaintiff in the above-referenced action, as well as any of its corporate affiliates, divisions, subgroups, subsidiaries, parent corporations, predecessors, successors, assignees, agents, legal representatives, trustees, consultants, and all representatives and other persons acting on its behalf, and its present and former officers, directors, trustees and employees.

2.     "Factory Mutual," "You," "Your," or "Defendant" shall mean, collectively or separately, Factory Mutual Insurance Company, Defendant in the above-referenced litigation, as well as any of its corporate affiliates, divisions, subgroups, subsidiaries, parent corporations, predecessors, successors, assignees, agents, legal representatives, trustees, consultants, and all representatives and other persons acting on its behalf, and its present and former officers, directors, trustees and employees including insurance brokers and attorneys acting on its behalf.

3.     The "Policy" shall mean the Howard Hughes Medical Institute Property Loss Policy, No. LP591, covering the period of April 1, 2005 through April 1, 2006.

4.     The "Janelia Farm Fire" shall mean the February 5, 2006 fire at HHMI's Janelia Farm Research Campus located in Ashburn, Virginia, referred to in ¶ 2 of the Complaint.

5.     The "Insurance Claim" shall mean HHMI's insurance claim under the Policy for its losses from the Janelia Farm Fire.

6.     "And" shall mean "or," and "or" shall mean "and," as necessary to call for the broadest possible response.

7.     "Communication" shall mean any writing transmitted between persons or any oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, e-mail messages, meetings, memoranda, telegraphic, telex, computer and facsimile communications or transmittals of

documents, and all documents concerning such writings or oral conversations. "Communication" as used herein specifically includes internal writings, oral conversations or meetings among the officers, board members, employees or other representatives of Defendant.

8.    "Complaint" shall mean the Complaint filed by HHMI in this action, dated June 4, 2007.

9.    "Concern" and "Concerning" shall mean referring to, relating to, constituting, discussing, evidencing or in any way relevant thereto.

10.    "Document" means, without limitation, the original and all copies and translations of any information in any written, recorded, graphic or electronic form, including all memoranda of oral conversations, as well as all compilations, catalogs, and summaries of information or data, whether typed, handwritten, printed, recorded, digitally coded, or otherwise produced or reproduced, and shall include, without limitation, each and every note, memorandum, letter, email, telegram, publication, telex, circular, release, article, book, report, prospectus, record, financial statement, computer disc, computer tape, microfilm, microfiche, microform, index, list, claims file, analysis chart, money order, account book, draft, summary, diary, transcript, agreement, calendar, graph, receipt, chart, business record, insurance policy, computer printout, contract, and order. "Document" also means any tape or audible recording, any photograph, motion picture, or videotape, and any non-identical copy thereof, either by virtue of other material appearing thereon, such as handwriting or typewriting, or otherwise.

11.    "Each" shall mean "each," "every," "any" and "all."

12.    "Identify" or "Provide":

(a)    when used in reference to a natural person, means to state the person's full name, present or last known home address and telephone number, present or last known business address and telephone number, occupation, job

title, job description, any present or former relationship to any of the parties to this action and the person's years of employment;

(b)    when used in reference to a corporation, partnership, or any legal entity other than a natural person, means to state its full name, form of organization (e.g., partnership, corporation, etc.), and the present or last known address of its principal place of business and its state of incorporation or other organization;

(c)    when used in reference to a document, means to state the type of document (e.g., letter, memorandum, email, computer file, spreadsheet, contract, insurance policy, etc., or some other appropriate description), the title, date, or other identifying numbers thereon, the document's general subject matter, its author or authors, each author's affiliation, the addressee or addressees of the document and their affiliations, and the identity of each person having possession, custody or control of the document or any copy thereof, and to state whether the document has been produced to HHMI or withheld from production on grounds of privilege. If any such document is no longer in your possession or custody or subject to your control, "identify" also means to state what disposition was made of it and the date of such disposition;

(d)    when used in reference to an act, occurrence, transaction, decision, statement, communication, or contract (hereinafter collectively referred to as an "act" or "action"), means to describe the substance of the event or events constituting such act(s), the place and date thereof, and to identify the persons present or involved and any documents referring or relating thereto; and

(e)    when used in reference to an oral conversation, means to state, if possible, exactly what was said, or if impossible, to the best of your ability the substance of what was said, when, where, by whom and to whom, whether it was by telephone or in person, the names and addresses of those present during or involved in the conversation, or, in the case of a telephone communication, the location of each party to the conversation.

13.    "Person" includes both the singular and plural, and means any natural person, business entity, corporation, cooperative, bureau, public corporation, partnership, joint venture, group, club, association, institute, society, office, organization, and any governmental entity or department, agency, bureau, or political subdivision thereof.

14.    "Representative" includes both the singular and plural and means:

(a)    any past or present officer, director, partner, associate, employee, servant, agent, subsidiary, affiliate, legal counsel, or any agent of such persons; and

(b)    any other persons acting or purporting to act on behalf of, or in concert with such persons, including, without limitation, insurance brokers or agents, auditors, actuaries, and consultants of any type.

15.    "Claims File" or "Claims Files" shall mean the collection of materials and/or information assembled or examined or referred to by Defendant in response to HHMI's claim for insurance coverage for the Janelia Farm Fire and during the handling, investigating, adjusting of and response to that claim for insurance coverage, including any materials and data and/or information stored electronically.

16.    "Underwriting File" shall mean the collection of materials and/or information assembled, examined or referenced by Defendant during the process of underwriting the Policy.

17.    "Claims Manuals" shall mean, without limitation, instructional materials, guidelines, procedures, best practices or other Documents, used by Defendant for guidance, reference or training by persons involved in the handling of claims or measurement, calculation or quantification of losses under property insurance policies.

18.    "Underwriting Manuals" shall mean, without limitation, instructional materials, guidelines, procedures, best practices or other Documents, used by Defendant for guidance, reference or training by persons involved in the underwriting of property insurance policies.

## DOCUMENTS REQUESTED

1.    Any Claims Files maintained by Factory Mutual concerning the Insurance Claim.

2.    Any Claims Files maintained by attorneys on behalf of Factory Mutual concerning to the Insurance Claim to the extent that such files include facts or Documents, or materials generated in the course of such attorney's work as a claims handler.

3.    Any Underwriting File maintained by Factory Mutual with respect to the Insurance Policy, and any Documents that Factory Mutual used, reviewed or prepared in connection with the underwriting of the Insurance Policy and any renewals.

4.    All Claims Manuals, as defined herein and/or however such manuals are denominated by You.

5.    All Underwriting Manuals, as defined herein and/or however such manuals are denominated by You.

6.    All Documents upon which Factory Mutual relies or has relied in denying or refusing to pay all or part of the Insurance Claim as presented by HHMI.

7.    All Documents concerning communications with any person, including any Factory Mutual representative(s), any industry consultant, any insurance broker, agent or intermediary, any other insurance companies or reinsurers, relating to the procurement, negotiation, underwriting, purchase, issuance, terms or conditions of the Policy or the Insurance Claim.

8.    All documents concerning communications between You and Gilbane regarding all or part of the Insurance Claim.

Dated:    July 31, 2007

*Of Counsel:*

Richard P. Lewis
Marshall Gilinsky
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020-1182
(212) 278-1000

POTTER ANDERSON & CORROON LLP

By _____
David J. Baldwin (No. 1010)
Jennifer C. Wasson (No. 4933)
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, Delaware  19801
(302) 984-6017
E-mail:  dbaldwin@potteranderson.com
         jwasson@potteranderson.com

*Attorneys for Plaintiff Howard Hughes Medical Institute*

810138

NYDOCS1-867331.2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

HOWARD HUGHES MEDICAL INSTITUTE,

           Plaintiffs,

    vs.

FACTORY MUTUAL INSURANCE COMPANY,

          Defendants.

CIVIL ACTION NO. 07-420

## STATEMENT PURSUANT TO LR 7.1.1

    Counsel for Defendant, Factory Mutual Insurance Company, hereby certifies that the subject matter of the Defendant's Motion for a Protective Order was discussed with counsel for Plaintiff but no agreement on the issue was reached. Accordingly, this motion is necessary and presents a disputed issue.

DATE: August 30, 2007

PHILLIPS, GOLDMAN & SPENCE, P.A.

By: _Robert S. Goldman_

    Robert S. Goldman, Esquire (#2508)
    Lisa C. McLaughlin, Esquire (#3113)
    1200 North Broom Street
    Wilmington, DE 19806
    (302) 655-4200

    - and -

    Thomas S. Brown, Esquire
    Andrew B. Smith, Esquire
    GIBBONS P.C.
    1700 Two Logan Square
    18th and Arch Streets
    Philadelphia, PA 19103
    (215) 665-0400
    Attorneys for Defendant,
    Factory Mutual Insurance Company

#1223376 v1
106330-59824

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HOWARD HUGHES MEDICAL INSTITUTE, | CIVIL ACTION NO. 07-420 |
| Plaintiffs, | |
| vs. | **PROTECTIVE ORDER STAYING DISCOVERY** |
| FACTORY MUTUAL INSURANCE COMPANY, | |
| Defendants. | |

## PROTECTIVE ORDER

**THIS MATTER**, having come before the Court on September _____, 2007, and counsel for all parties having appeared before the Court; and good cause appearing;

**IT IS** on this _____ day of September, 2007

**ORDERED** that discovery in the above action is stayed pending the disposition of Factory Mutual Insurance Company's Motion to Compel Appraisal and/or it's Motion to Transfer Venue; and it is further

**ORDERED** that a copy of this Order shall be served upon all counsel within seven (7) days of the date hereof.

_____

Hon. Mary Pat Thynge, USMJ

#1218468 v1
106330-59824

## CERTIFICATE OF SERVICE

I, Robert S. Goldman, attorney for Defendant, hereby certify that on this the 30th day of August, 2007, served Defendant's Motion for a Protective Order Pursuant to Federal Rule 26(C) and Memorandum of Law in support thereof upon the following via U.S. Mail, First Class Delivery, postage prepaid:

David J. Baldwin, Esquire
Jennifer C. Wasson, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, DE  19801

Richard P. Lewis, Esquire
Marshall Gilinsky, Esquire
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020-1182

PHILLIPS, GOLDMAN & SPENCE, P.A.

By: _____
Robert S. Goldman, Esquire (#2508)
1200 North Broom Street
Wilmington, DE  19806
(302) 655-4200
(302) 655-4210 Fax

#1223275 v1
106330-59824